[Civ. No. 10684.   Second Appellate District, Division Two.—February 7, 1936.]

CEDRIC A. BROCKMAN, Appellant, v. FRED B. ALDOUS, etc., et al., Respondents.

James V. Brewer for Appellant.

Joe Crider, Jr., E. H. Tilson and A. F. Mack, Jr., for Respondents.

CRAIL, P. J.—This is an appeal by the plaintiff from a judgment of nonsuit. Defendants Aldous were general contractors in the construction of a building in Los Angeles and defendant Knox was their general superintendent of construction. The plaintiff was an employee of the Cement Gun Construction Company. The general contractors sublet a contract to the Cement Gun Company to put a gunite finish on a certain outside wall of the building. The contract for this work was in writing and provided for the furnishing of the necessary scaffolding by the general contractors. The scaffolds were built by the general contractors under the direction of their general superintendent and were used in the first instance during the construction of the building. Thereafter they were furnished to the Cement Gun Company crew to do the gunite work. Plaintiff was a member of this crew, and after plaintiff had worked two and one-quarter days on the scaffolds, one of them broke, causing plaintiff the injuries complained of. The plaintiff's contention in the trial court was that the defendant negligently furnished said scaffold and negligently directed its use by plaintiff. At the close of the plaintiff's case the court granted a nonsuit as to defendant Knox on the ground that there was no evidence that he had anything to do with the construction of the scaffold and as to the general contractors on the ground that there was no substantial evidence of negligence on their part and no evidence that there was anything defective about

652

the scaffold. The sole question necessary for us to determine is whether there is any substantial evidence tending to support the above alleged facts.

Viewing the evidence in the light most favorable to plaintiff, the scaffold in question was twelve feet high and was what is ordinarily known as a "jackhorse", having two legs on one end and no legs on the other and depending upon the weight of the platform and the persons on it to brace the end of its header against the building. The header was about 4½ feet long, made of 2-inch by 4-inch material. All other parts of the scaffold, including the 12-foot legs, were made of 1-inch by 6-inch boards. The braces and stays were made of the same 1-inch by 6-inch material. The plaintiff was working on this scaffold when one of its legs broke, the scaffold collapsed and he fell to the ground. There was no unusual motion before the collapse of the scaffold. The foreman of the plaintiff's crew testified that Mr. Knox, the general superintendent of the defendants, told him that these scaffolds were for their use, and when the foreman told him that they did not look so good—that they looked kind of flimsy, the superintendent said, "Well, we have been using them here for weeks and if they held us they should be good enough for your people." He also testified that one leg of the jackhorse broke about six inches below the bottom of the side braces, that it broke at an angle of 45 degrees, split in two, broke straight through the wood from one flat surface to the other, and when one leg broke the platform in falling broke the other leg and plaintiff was thrown to the ground.

One of the witnesses for plaintiff testified that he was a graduate of the California Institute of Technology and had studied structural engineering and was for six years building inspector and assistant city engineer of the city of Upland; that he had had experience with technical data, structural design, lumber and strength of materials, including designing, supervision and inspection, and as such had had experience with scaffolds, both in the supervision and making of scaffolds and the inspection. He testified further that the scaffold as described by the witnesses with a load of 450 pounds distributed within five feet of the end of the scaffold would not be safe. In other words, that the scaffold was not safe for the purpose for which it was furnished and for which it was directed to be used. Defendant Knox, called as a

witness under section 2055 of the Code of Civil Procedure, testified that he was the superintendent in charge of this particular building; that the defendants were to furnish the scaffolds and did furnish the scaffolds for the work and that he pointed them out to the foreman for the Cement Gun Company; that the scaffolds had been built about three weeks and that they were built by the carpenters on the job under his direction; that he did not inspect the lumber after it was purchased. After reading the record in this case we are satisfied that there was some substantial evidence tending to sustain the contentions that the scaffold was erected under the supervision of the defendant Knox, that the scaffold was defective, that the defendants were negligent in the construction of it, and negligent in directing that it be used for the gunite job. Under the circumstances these questions were for the jury to decide and the nonsuit should not have been granted.

Judgment reversed.

Wood, J., and McComb, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 2, 1936, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 6, 1936.