[Civ. No. 12247. First Dist., Div. Two. Sept. 24, 1943.]

JAMES CAMPBELL, Respondent, v. FONG WAN et al., Appellants; STATE COMPENSATION INSURANCE FUND, Intervener and Respondent.

RICHARD HOCKING, Respondent, v. FONG WAN et al., Appellants; STATE COMPENSATION INSURANCE FUND, Intervener and Respondent.

JAMES PEGNEM et al., Respondents, v. FONG WAN et al., Appellants.

(Three Cases)

554

D. W. Brobst, A. J. Harwood and John L. McNab for Appellants.

Weinmann, Quayle & Berry, Chas. Burkett, Jr., Nichols & Richard and Leonard Dieden for Respondents and for Intervener and Respondent.

NOURSE, P. J.—These three actions were brought for personal injuries by Hocking, Pegnem and Campbell against Fong Wan and his two sons Richard R. Fong and Edward E. Fong. The cases were consolidated for trial and the jury returned a verdict in favor of each of the plaintiffs upon which three judgments were entered. The State Compensation Insurance Fund was allowed to intervene, it being a compensation insurance carrier for the employer of the three plaintiffs, and it also had judgment against defendants to recover compensation paid. The defendants above named appeal from the judgments entered against them. A rehearing was granted in this case in order to give further consideration to the effect of safety orders of the Industrial Accident Commission in determining the standard of care required in building a scaffolding.

The plaintiffs, Hocking, Pegnem and Campbell, were employed by Witt as plasterers in remodeling the New Shanghai Cafe in Oakland, which property stood in the names of Richard and Edward Fong, but which was managed by Fong Wan, who was an alien incapable of holding real property in his own name. The plaintiffs were injured when they fell from a scaffolding placed in front of the New Shanghai Cafe building. One Lloyd Dawson, a contractor, had supervised the erection of the scaffolding and had made an oral agreement with Witt for the plastering job. Dawson was paid $10 a day plus a fixed percentage of the cost if he kept the cost of building within certain limits; he supervised the work, but all workmen, insurance, both social security and workmen's compensation, and materials were paid for through Fong Wan's office; Dawson had not posted a bond, but he secured

the building permit; and some testimony was given that Fong Wan was around the job frequently, and urged the workmen to rush the completion of the remodeling. Fong Wan testified that he was making the improvements for himself and for his sons. He put some of his own funds into the job. He managed the New Shanghai Cafe when it was in operation and his sons had no interest in the venture, other than their ownership of the realty. The rentals from the real property were collected by him, and he would turn part over to his sons. At the time they purchased the real property, Fong Wan told the sons that they would have to take title because he was an alien who could not hold real property.

There is a sharp conflict in the testimony concerning how the scaffolding was constructed—what grade of lumber was used, how many nails supported the framework, and how the ribbons were placed beneath the ledger supporting the platform planks upon which the workmen stood. Two of the injured workmen testified that they noticed that the platform upon which they were working was supported by only a single ledger. Over objection that the usual and standard practice in the community was immaterial where there were laws and statutes of the State of California covering the matter, testimony of a qualified expert was admitted concerning the "usual and standard of custom and practice of the building trade in" the vicinity in constructing scaffoldings. This testimony paralleled the requirements of the General Construction Safety Orders of the Industrial Accident Commission then in force. It also paralleled the requirements of the Construction Safety Orders effective approximately two months after the accident except that it failed to mention the alternative method of construction providing for either two ledgers of a small size or one ledger of a large size. The testimony mentioned only the two ledger type construction. Defendant Dawson testified that the scaffolding in question conformed to the one ledger type construction. However, on this point his testimony is in conflict with the testimony of the men who built the scaffold, who testified the ledgers used were of the size of the double ledger type construction.

Appellants, on the basis of Lloyd Dawson's deposition, contend that there is insufficient evidence to support the implied finding of the jury that Dawson was an employee of the appellants, but they contend that this evidence shows that he was an independent contractor having complete control over the construction of the improvements, though paid

upon a per diem basis. After this deposition was taken, special counsel was employed for the witness and his testimony at the trial was directly contrary to that given in his deposition. The jury chose to accept the testimony given at the trial, and that ends the controversy.

Next appellants contend that the court committed reversible error in allowing the expert testimony relating to the custom and usage of building contractors in constructing scaffoldings in the face of the safety rules of the Industrial Accident Commission. The court takes judicial notice of the General Safety Orders of the Industrial Accident Commission. (Code Civ. Proc., sec. 1875 (3); *Drillon* v. *Industrial Acc. Com.*, 17 Cal.2d 346, 352 [110 P.2d 64]; Lab. Code, sec. 7157.) However, it is clear that it was not error to admit the testimony of general usage and standard. The evidence was relative to the issues at hand as expert testimony on a matter not within the common knowledge of jury. (*Brockman* v. *Aldous*, 11 Cal.App.2d 650 [54 P.2d 43]; *Long* v. *John Breuner Co.*, 36 Cal.App. 630, 636 [172 P. 1132]; *McStay* v. *Citizens Nat. T. & S. Bank*, 5 Cal. App.2d 595 [43 P.2d 560].) The testimony was necessary in order for the jury to come to an intelligent conclusion concerning the standard of care required of an ordinary man in constructing a scaffolding.

But the appellants contend that the Safety Orders of the Industrial Accident Commission establish the only standard for the construction of scaffolding. They argue that evidence of custom or usage may not be admitted to vary the express terms of a statute. This position is not tenable. California Jurisprudence states the rule: "It does not follow that merely because one has complied with the terms of a statute or ordinance that he is thereby absolved from negligence. One may act in strict conformity with the terms of an enactment, and yet not exercise the amount of care which is required under the circumstances." (19 Cal.Jur. 634; *Sickles* v. *Mt. Whitney Power & Elec. Co.*, 177 Cal. 278, 280 [170 P. 599]; *Bush* v. *Southern Pac. Co.*, 106 Cal.App. 101, 108 [289 P. 190]; *Harper* v. *Northwestern Pac. R. Co.*, 34 Cal.App.2d 451, 454 [93 P.2d 821].) Although we can conceive of regulatory statutes, compliance with which would be due care as a matter of law in the absence of other circumstances, (*cf. James* v. *White Truck etc. Co.*, 1 Cal.App.2d 37, 42 [36 P.2d 401]) the regulations before us were not intended to be more than the minimum standard of care stated to meet the

charge of wilful misconduct or of a criminal violation. Section 6318 of the Labor Code, found in the Workmen's Safety part of the Safety in Employment Division, provides that orders of the Industrial Accident Commission establish a minimum standard of care to be construed in connection with any local order relative to the same matter, provided that the local order may not lower the standard of care required by the commission. This section foresees a possibly higher standard of care in relation to safety in places of employment in the particular locality than that imposed by the commission. Although no similar provision is found in the article relating to scaffolding which contains special provisions with respect to employees working on a scaffolding, it is clear that the Legislature did not intend to abrogate higher standards in relation to scaffolding and not in other places of employment.

■ Finally, it should be noted that we can find no prejudice in the admission of the testimony if any error there was. To show prejudice in the admission of the testimony, the appellants assert that it varied from the Industrial Accident Commission Construction Safety Orders in stating that two ledgers were required instead of one. This accident happened on July 2, 1940. At that date the following pertinent statutes and orders were in force: Labor Code 7156—"Offenses. Any person employing or directing another to do or perform any labor in the construction, alteration, repairing, painting, or cleaning any house, building, or structure within this State is guilty of a misdemeanor who does any of the following:

"(a) *Knowingly or negligently furnishing, etc.* Knowingly or negligently furnishes or erects, or causes to be furnished or erected for the performance of such labor, unsafe or improper scaffolding. . . ." Labor Code 7157—"Safety orders, making and enforcing. The commission may make and enforce safety orders in the manner prescribed by law, to supplement and carry into effect the purposes and provisions of this article."

General Construction Safety Orders—"The platform of the scaffold shall be supported by putlogs made of one by six (1x6) inch boards or heavier material, laid on edge." ("Putlogs" are the ledgers herein referred to.)

Although on October 1, 1940, revised Construction Safety Orders went into effect which allowed the alternative methods of construction for light building trades (*cf.* Order 1120) testified to by the expert and Dawson, depending on the size of the ledger board, at the date of accident the only criterion

laid down by the Industrial Accident Commission was that the ledgers be 1″x6″ boards at least, and the number was to be determined solely by the words "unsafe or improper" in section 7156 of the Labor Code. Therefore the testimony of the expert was not in conflict with the statutes of the State of California, but explanatory of a statutory duty.

Next it is argued that the respondents were guilty of contributory negligence as a matter of law. Two of them testified that they looked at the scaffolding before going up and saw that it was constructed with but one ledger, the third testified that he paid no attention to it. If the only claimed defect in the construction of the scaffolding was the use of one ledger the argument of appellants would be more persuasive. But where other defects were claimed, some of which were not patent, the question of contributory negligence was properly left with the jury. To put it another way, where there is evidence of negligence in the construction or maintenance of an instrumentality, which is not patent and cannot be observed by the use of ordinary care, the question of the negligence of the party using the instrumentality is one of fact.

Finally it is argued that the judgment should not stand against appellant Fong Wan since he was merely the agent of his two sons. It appears that the sons were the record title owners of the premises, that Fong Wan, independent of the sons, conducted the cafe upon the premises and made the plans to construct a new building. Into this building Fong Wan put some of his own funds, and paid for the work and materials. Whether his status was that of a trustee, agent, or equitable owner cannot be determined from the record. In all his dealings with labor and material he did not represent himself as agent for his sons, but held himself out as at least a part owner in the premises. He was sued as such, and the burden was upon him to prove that his activities were limited to the relation of agent for his sons. Thus the question of that relation was one of fact for the jury, and the implied finding that he was an owner of some interest is supported by substantial evidence.

The judgments are affirmed.

Spence, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 22, 1943.