[Civ. No. 13381.   First Dist., Div. One.   July 21, 1947.]

MABEL V. DOCHERTY, Appellant, v. KEY SYSTEM (a Corporation) et al., Respondents.

Nichols & Richard, Nichols, Richard & Allard, Milo E. Ayer and Stanley C. Smallwood for Appellant.

Donahue, Richards & Hamlin, Donahue, Richards, Rowell & Gallagher, Frank S. Richards, Arthur E. Sugden and Bryant M. Bennett for Respondents.

BRAY, J.—Action by plaintiff for the death of her husband in a collision at Ashby Avenue and Adeline Street in Berkeley between an automobile driven by the deceased and a train of the defendant. The jury brought in a verdict for plaintiff, but the court entered a judgment in favor of defendants notwithstanding the verdict, upon the grounds that ''. . . the decedent, was, at the time of and prior to the happening of the collision in question, guilty of contributory negligence as a matter of law [and] . . . That the motion for a directed verdict heretofore made by the Defendants herein should have been granted by the Court.'' In addition to the denial of the motion for directed verdict, the court also denied a motion for nonsuit.

Before considering the evidence, it may be well to consider the rule of law applicable to this appeal.

''The right of the trial court to set aside a verdict and enter a contrary judgment is absolutely the same as its right to grant a nonsuit. [Citing cases.] The court should, therefore, grant such a motion when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff. [Citing cases.]'' (*Card* v. *Boms,* 210 Cal. 200, 202 [291 P. 190].)

As said in *Shannon* v. *Thomas,* 57 Cal.App.2d 187, at page 193 [134 P.2d 522] : ''. . . it is only when reasonable minds can draw but one inference, and that inference points inevitably to the negligence of plaintiff, contributing directly or proximately to his injuries, that the law will step in and forbid a recovery under the verdict. Preservation of the inviolable right of a litigant to a trial by jury is guaranteed by both the federal and state Constitutions, which accounts for the rule that it is only when it can be said as a matter of law that no reasonable conclusion is legally deducible from the evidence other than would sustain a verdict for the defendant, and that

any other holding would be so lacking in evidentiary support that an appellate court would be impelled to reverse it upon appeal or a trial court set it aside, that a court is justified in taking the case from the jury and rendering the decision itself. [Citing cases.]

"Upon this appeal, therefore, there is but one question to be determined by us and that is whether the appellants or either of them were as a matter of law guilty of contributory negligence which proximately contributed to their injuries. If this question requires an affirmative answer, then recovery is barred."

In view of the above rule, only the facts most favorable to plaintiff will be set out. Contradictory evidence will be omitted.

■ The accident occurred on a Saturday evening at approximately 8 o'clock. At the scene of the accident, Adeline Street runs approximately north and south, and is approximately 147 feet, 7 inches wide. There are two sets of tracks on Adeline Street, only the more easterly of which is used by the Key System; although some distance on either side of the intersection in question, the Key System operates on double tracks. For five or six blocks north of the intersection in question and for three or four blocks south, the tracks used by the Key System are on a private right-of-way with the ties exposed, although at the point where Ashby crosses Adeline, the right-of-way is paved. There is a jog in Ashby at Adeline, the point where Ashby enters from the east being some distance north of the point of entry from the west. From the north curb of Ashby where it enters on the east side of Adeline to Emerson Street, which enters Adeline also on the east side, just south of the point where Ashby enters Adeline from the west, the distance is over 300 feet. At the point where Ashby enters Adeline from the east side, it is divided in the center by a double white line with two traffic lanes on each side thereof, and Ashby is similarly lined with the same number of traffic lanes where it enters Adeline Street from the west. There are stop signs stopping all traffic entering the intersection from either street.

John Mitts is the only eyewitness produced by plaintiff. He testified that he was in the antique business in a store on Adeline Street which he located on a map or plat (plaintiff's Exhibit 1). His car was parked in front of or to the north of his store. He placed the car on the map at a point on the east side of Adeline Street and about 40 feet from the point

M-2 hereafter mentioned. As he was walking to his car he first saw the electric train coming to a stop just before it hit the easterly jog of Ashby Avenue (over 150 feet away from the point of impact). At that time he saw Docherty's car among several cars coming east on Ashby towards Adeline. He paid no particular attention to them. Docherty's car was about 100 feet from the tracks with one car ahead of it and quite a number behind it. At that time there was traffic going down Adeline to which he did not pay much attention. Mitts had entered and started his car when a big van-type truck passed him to his left going north on Adeline traveling as close to the curb on the left side of the street as it could get. (On Adeline there is a curb paralleling, and less than 10 feet to the east of, the railroad tracks. Its northerly end is in front of Mitts' store.) Mitts then placed on the map the location of the truck (at M-3). He drew the front end of the truck as just opposite the rear end of his car and about 20 feet to 25 feet beyond the stop mark on the pavement of Adeline Street. The truck was going about 20 miles an hour. At that time Docherty's car was about 100 feet from the truck. Mitts then placed Docherty's car on the map at a point marked M-2 which shows the car on the westerly of the two sets of tracks, its front touching the easterly rail of the westerly tracks (actually no more than 20 feet from the truck as marked). Mitts then stated that at the time the truck was passing him Docherty's car was 75 feet from the point where it was hit, but again located Docherty's car at M-2. Apparently Mitts' judgment as to distance was not very accurate as he estimated the tracks as being 25 feet apart (apparently meaning the distance between sets of tracks). Actually, the distance from the most westerly rail of the westerly tracks to the most easterly rail of the easterly tracks is only 18.2 feet. At this point there was a car in front of and 10 feet from Docherty's car. This car passed in front of the truck; the truck almost hit it, and Mitts' vision of Docherty's car was obstructed by the passing truck. At that time the train had started out from Ashby station. When the truck passed Mitts, Docherty's car was at M-4. The diagram placed by Mitts on the map shows the car diagonally across the easterly set of tracks, its front touching the most easterly rail. It was barely moving and the train was about 100 feet away increasing its speed. The train struck Docherty's car and pushed the car in front of it down to the next street corner. (According to measurements made by a police officer the train went 154 feet

after striking the car.) Mitts estimated the speed of the train when it hit the car as 30 miles an hour. When the train was 50 to 75 feet from the car the bell was sounded on the train. On cross-examination Mitts said that when he last saw the truck it was almost going out of sight north on Adeline across Ashby Avenue, going between 20 and 25 miles an hour, and at that time Mitts placed the location of the train as M-6, which is approximately 30 feet from M-4, the location of Docherty's car and the point of the accident. Mitts saw Docherty's car travel from M-2 to M-4. (On direct examination he said that he saw the car at M-2, the truck obstructed his view, and he next saw the car at M-4.)

A reasonable inference from Mitts' testimony as a whole is that Docherty was approaching the crossing second in a line of cars; that the train was far enough away to have enabled him to cross the tracks in safety; that the truck ran through the stop sign, blocked the path of the car ahead of him, causing Docherty to either stop on the tracks or to almost stop, long enough for the oncoming train, which in spite of the fact that it was approaching a heavily traveled intersection and a line of cars approaching and crossing it, kept increasing its speed, and without giving any warning until it was 50 to 75 feet from the crossing, collided with Docherty's car; that Docherty would have safely crossed had it not been for the action of the truck in violating the law in not stopping at the stop sign and thereby creating an unexpected hazard, which together with the negligence of the operator of the train caused the accident.

It is true that Mitts' testimony is somewhat contradictory and that the inference above stated is not the only one which can be drawn from his testimony. Moreover, it is a possible and reasonable inference from Mitts' testimony (and this inference is supported by the evidence introduced by defendants) that the accident was solely due to the fault of Docherty, or that Docherty at least was guilty of contributory negligence. But taking Mitts' testimony and the legitimate inferences therefrom, as we must, there was evidence of sufficient substantiality to require that the jury pass upon the case.

In drawing the inference that the truck ran through the stop sign, we are disregarding the conclusion of the witness Mitts in that regard, as it was objected to and was clearly not admissible. However, the fact that a truck of the size testified to by Mitts was going 20 miles an hour at a point not over 25 feet from the stop line raises a legitimate inference that it

did not stop, as it is exceedingly doubtful that such a truck could reach that speed from a standstill in 25 feet.

Also, a reasonable inference can be drawn that the deceased as he approached the crossing would have seen the truck considerably to the south of the stop line, would have assumed that it would stop as required by law; and then seeing the train a safe distance away, was justified in proceeding to follow the car ahead of him, keeping his eyes on the train to his left, as the point from which danger might be expected, and then due to the failure of the truck to obey the law, deceased found himself delayed just long enough to be unable to get out of the way of the approaching train. There was not room enough between the truck and the tracks for Docherty to have cleared the tracks.

It is agreed by both parties that under the situation as it existed at the point of the accident, the rules relative to railroad intersections should apply rather than the rules applying to streetcar tracks. (*Lund* v. *Pacific Electric Ry. Co.,* 25 Cal. 2d 287 [153 P.2d 705]; *Dolton* v. *Green,* 72 Cal.App.2d 427 [164 P.2d 795].) Thus, Docherty, upon observing the presence of the open tracks in the private right of way, was under a special duty of care. (*Heintz* v. *Southern Pacific Co.,* 63 Cal.App.2d 699 [147 P.2d 621].) The motorman of the train was entitled to assume that any person approaching the track would use due care for his own protection. While the motorman ordinarily would be under no duty to stop, slow down or otherwise change the operation of his train in approaching the crossing, still, in view of the line of traffic crossing the tracks, the oncoming truck blocking the line of traffic and the peculiar circumstances here, it was for the jury to determine whether or not it was negligence for the train to approach the crossing at an ever-increasing speed reaching 30 miles an hour, without giving any warning until 50 to 75 feet away.

While, as pointed out by respondents, there is no direct evidence in the record that deceased stopped before approaching the tracks, that fact is not controlling. The evidence showed that deceased was familiar with the crossing. Without resorting to the due care presumption, the jury had the right to infer from all the circumstances of the case that had deceased looked as he approached the crossing he would have seen the train far enough away to permit him to continue on and clear the tracks in ample time, had not the sudden emergency created by the truck blocked his passage.

Respondents rely upon the case of *Dolton* v. *Green, supra.* (72 Cal.App.2d 427.) In that case Dolton at a crossing quite similar to the one here, on making a left-hand turn 58 feet from the tracks, entered a line of moving traffic behind a sedan which was following another vehicle. At this point he saw the oncoming train, but made no estimate of its speed, and did not look at it again. While he was crossing the tracks, the two cars ahead of him suddenly stopped to permit the passing of traffic ahead of them going at right angles to their approach. Dolton could not go forward or backward because of the cars ahead of and behind him, and was struck by the train. He was held guilty of contributory negligence as a matter of law because he did not stop before he went upon the tracks. The court said (p. 443) : ''While it is true that respondent could not go backward because of the presence of another vehicle 'about five feet behind me,' he could nevertheless have stopped his truck at any time before he went upon the tracks. He was travelling at a rate of speed of from 10 to 12 miles per hour and, according to his own testimony, could have stopped his vehicle within 10 or 12 feet. The situation here presented is not one where without negligence on his part a vehicle driver finds himself in a position where the circumstances suddenly confronting him may excuse his failure to follow the law and wherein what a reasonable person might do under similar circumstances is not so clear but that reasonable minds might differ on the question. In the case with which we are here concerned the physical facts shown by the undisputed evidence raise the inevitable inference that respondent admittedly not only could see but did see the electric car approaching when he was in a position of safety 58 feet from the tracks; that he failed to again look in the direction of the approaching danger or pay any attention thereto before he reached a hazardous position on the track; that at any time before he drove on to the tracks he could have stopped his truck within a distance of 10 or 12 feet; that he was also aware of the traffic proceeding east and west on the south side of Venice Boulevard and that such westbound traffic might, as it did, cause the vehicles in front of him to stop. The evidence shows that although respondent had an unobstructed view of the tracks and the car approaching thereon for the last 58 feet, he still continued to drive up to and upon the tracks in the face of the approaching car, and that during the time just mentioned he neither judged the speed of the car nor looked toward it to see what effect its approach to the intersection might have upon his safety.''

The distinction between the Dolton case and ours is that there Dolton while 58 feet from the tracks saw the approaching train 200 feet away, paid no more attention to it, nor estimated its speed, continued to the tracks at a speed of about 12 miles an hour, entered upon the tracks with the knowledge of the boulevard traffic going at right angles just across the tracks, and the probability of the cars ahead of him being blocked by that traffic. In our case, as pointed out, the jury could infer that at the time Docherty entered upon the tracks the train was far enough away not to constitute an immediate hazard, that had he noticed the truck before it reached the stop sign, he would not necessarily be negligent in no longer watching the truck and in assuming that it would stop, which would have enabled him and the car ahead to clear the tracks, and that while keeping watch of the oncoming train he was blocked while on the tracks by the truck continuing to come ahead without stopping at the stop sign.

Under the testimony of Mitts, there was no time when it could be said as a matter of law that Docherty was guilty of contributory negligence. It is not clear from the testimony whether Mitts first saw Docherty's car in the line of cars approaching the tracks before it arrived at the westerly set of tracks (M-2). But at that point a reasonable inference may be drawn that the train was far enough away so that Docherty was in no peril from its approach, had the truck stopped at the stop sign. Again when Mitts next saw Docherty (at M-4) on the easterly tracks (the ones upon which the train was approaching), it is a reasonable inference that he would have been able to have cleared the tracks except for the action of the truck. This case really resolves itself into the one question, as a matter of law, was Docherty negligent in assuming that the truck would stop at the stop sign, and in not watching it? To ask the question is to answer it. He had a right to assume that the driver of the truck would obey the law.

The truck was a hazard to Docherty; not because of its proximity, but because it failed to stop as required by law. The rule is well stated in *Dickinson* v. *Pacific Greyhound Lines,* 55 Cal.App.2d 824, at page 827 [131 P.2d 401] : ''In other words, defendant's bus was a hazard to plaintiff's car not because of the proximity of the bus but because of its unlawful speed. At its distance danger could be anticipated from it only by anticipating that its driver would violate the law. The general rule is that every person has a right to presume that every other person will perform his duty and obey the

law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which comes to him only from violation of law or duty by such other person. (*Harris* v. *Johnson*, (1916) 174 Cal. 55, 58 [161 P. 1155, Ann.Cas. 1918E, 560, L.R.A. 1917C, 477] ; *Medlin* v. *Spazier*, (1913) 23 Cal.App. 242, 245 [137 P. 1078], quoting from 29 Cyc. 516.) Whether reasonable care is used under the circumstances in any particular case in relying upon the presumption is a question for the jury. (*White* v. *Davis*, (1930) 103 Cal.App. 531, 545 [284 P. 1086].)''

In *Kirk* v. *Los Angeles Ry. Corp.*, 26 Cal.2d 833 [161 P.2d 673, 164 A.L.R. 1], the plaintiff left the curb when the traffic signal turned in her favor. She was hit by a streetcar which disregarded the traffic signal. The court said (p. 838): ''Whether or not she should have observed that the street car had started forward at that time, and if it had, whether she was aware of the danger, *were for the jury to decide.*'' (Emphasis added.) In *Nelson* v. *Southern Pacific Co.*, 8 Cal.2d 648 [67 P.2d 682], the plaintiff was driving her automobile over an oblique crossing of five sets of railroad tracks. She claimed she looked to the right and saw no train. She did not look in that direction again. She then looked to the left and saw a freight train on the first track for which she waited. She then started across the tracks and saw a locomotive to her left on track two. Keeping her eye on this locomotive she continued on and was struck on track four by a train coming from her right. The court said (p. 651): ''. . . her conduct in failing to look again to her right, in the presence of what she considered to be a definite hazard on her left'' was a question for the jury.

Cases like *Rasmussen* v. *Fresno Traction Co.*, 15 Cal.App. 2d 356 [59 P.2d 617], are distinguishable from this case, in that here the evidence sustains the conclusion that when deceased was first upon the tracks he had ample time to clear them, had it not been for an unexpected violation of the law by the truck. In the Rasmussen case and those mentioned in it, the situations were ones where the plaintiffs took a chance on beating the oncoming trains across the crossing. The stop, look and listen rule does not require the driver of a vehicle to wait for a train to pass unless it is in such proximity to the crossing as to constitute an apparent hazard.

One of the difficulties in this case is one inherent in all trials of this kind. An effort is made to pin a witness down to estimates of time, speed and distance, and then attempt to

show the contradiction between computations made upon such estimates and the other statements of the witness. For example, it is possible to figure out from Mitts' estimate under cross-examination of the position of the truck, the train and the car, just before the collision, that the truck did not cause a blocking of the path of Docherty's car long enough to cause the accident. Still taking Mitts' testimony as a whole (and disregarding the discrepancies in it) it is apparent that as Mitts sat in his car he had a definite impression of Docherty's car being held, either stationary or barely moving, on the tracks by the action of the truck just long enough for the accident to happen, and it was for the jury to determine whether the discrepancies overcame in weight his main story. The court cannot usurp the functions of the jury and say that they did. In *Nelson* v. *Southern Pacific Co., supra* (8 Cal.2d 648), concerning the effect of similar calculations, the court said (p. 651) : "It is obvious that even a slight error in the estimation of speed and distances would produce a totally different result. Such estimates and calculations do not therefore appear to us to be a sound basis upon which to declare inherently improbable the plaintiff's positive statement that no train was visible for a quarter of a mile on a stretch of straight track."

The testimony of Mitts, unaided by the presumption of due care, raises an inference of due care on the part of the deceased. Therefore, we have not considered appellant's contention that the presumption of due care applies, nor respondents' contention that it does not apply because contradicted by appellant's own evidence. Also, it is unnecessary to consider appellant's contention that the doctrine of last clear chance applies. It should be noted that these questions were not raised at the trial nor were any instructions offered thereon.

██ In this opinion we are not holding that the inference that Docherty was free from neglect is the only reasonable, nor necessarily the most reasonable one, to be drawn from the evidence, nor that a motion for new trial would not be justified. We are merely holding that "disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence" we cannot say "there is no evidence of sufficient substantiality to sup-

port a verdict in favor of the plaintiff." (Quotations are from *Card* v. *Boms, supra,* 210 Cal. 200, 202.)

As said in *Anthony* v. *Hobbie,* 25 Cal.2d 814, at page 818 [155 P.2d 826] : "But cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter of law are rare. The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion. [Citing cases.]"

The judgment entered notwithstanding the verdict is reversed and the trial court directed to enter judgment in accordance with the verdict of the jury.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied August 20, 1947, and the opinion was modified to read as above.

Respondents' petition for a hearing by the Supreme Court was denied September 18, 1947. Edmonds, J., and Traynor, J., voted for a hearing.