[Civ. No. 16715. Second Dist., Div. Two. June 7, 1949.]

WILBUR B. MORAN, Respondent, v. ZENITH OIL COMPANY (a Corporation), Appellant.

238

Bodkin, Breslin & Luddy, Henry G. Bodkin, Benjamin W. Henderson and S. V. O. Prichard for Appellant.

C. Ransom Samuelson and Joseph A. Ball for Respondent.

MOORE, P. J.—The primary question for decision is whether the owner of oil wells is liable for damages on account of injuries resulting to a workman in the employ of a contractor who undertakes to clean the wells by using appliances of the owner where a reasonable inspection thereof by the contractor disclosed no patent defect. Such liability having been adjudged by the court below, the owner has brought the matter here for review.

Appellant, Zenith Oil Company, is the owner and operator of three oil wells on a lease in Los Angeles County. Well No. 1 had been drilled some time prior to 1938, Well No. 2 in 1938, and Well No. 3 at a later date. Charles McGee, production superintendent for appellant, had drilled Wells 2 and 3, but not No. 1. Since October, 1940, he had resided on the lease and was in charge of the wells. Over each well was a derrick containing a crown block, pulleys or sheaves, and about 500 feet of wire cable.

In June, 1943, appellant engaged the Harbor Production Company to pull and clean the three wells. For such work the contractor customarily furnished the necessary men, power truck, tools and bailing lines, and if a tubing line[1] should be required for the work, it would also furnish such line at a rental of $10 per day. When appellant engaged Harbor Company, a tubing line was ordered but the order was later rescinded.

Harbor Company supplied a crew of four men under the supervision of a foreman, one Deck, to do the work. Respondent Moran was one of the crew which pulled and bailed Well

---

[1] A tubing line is used to pull rods and tubes from the wells when cleaning or pump changing is required. It is 1 inch in diameter and consists of a core of manila hemp enclosed in six strands of woven wire, each strand containing 19 steel wires.

No. 3 using the tubing line in the derrick on that well. The day before the work was finished appellant's superintendent informed Deck that they should next pull and bail Well No. 1 which also had a tubing line in its derrick. McGee and Deck then inspected the cable on the well and were apparently satisfied as to its condition.

On the following morning when the crew reported at the well one of the men scraped some rust from the outside of the cable with a penknife to see if "it looks all right from the outside." Following the customary practice, the cable hanging in the derrick was strung through a series of pulleys, whereupon the rods and pump were removed from the well. The men then restrung the line into a three-part fall giving a three-to-one mechanical advantage and proceeded to pull the tubing. Moran's assignment placed him directly beneath the traveling blocks which position required him to remove "slips" used to hold the weight of the tubing. While so occupied the tubing line parted near the crown block and the traveling blocks dropped upon Moran, pinning him to the floor of the derrick and inflicting grievous bodily injuries.

At the trial, defendant's motions for nonsuit, for a directed verdict, for judgment notwithstanding a verdict of $36,783 in favor of plaintiff were severally denied and the court entered judgment on the verdict. Appellant's motion for a new trial was also duly denied.

On appeal it is contended that (1) the verdict and judgment are against the undisputed evidence and the law, (2) the court erred in rejecting defendant's various motions, (3) the court abused its discretion in refusing to submit special interrogatories to the jury, (4) the court erred in refusing to give requested instructions and (5) the large verdict was given under the influence of passion and prejudice.

The judgment is contrary to neither the law nor the established facts. ▇ When the occupant of land knowingly permits a person to enter the premises for the purpose of performing acts which the workman has been employed to do, the proprietor is obligated to exercise reasonable care for the protection of the toiler. He must supply a reasonably safe place in which the work is to be done and must furnish and maintain such tools and appliances as are necessary and reasonably safe for use in the operations. A laborer so employed is chargeable with neither a concealed nor a latent defect in the equipment supplied. In the event he is injured as a result of a latent defect in the instrumentalities furnished him of

which he is ignorant, he may recover damages for resulting injuries, if it is shown that the employer, licensor or proprietor knew or by the exercise of reasonable care should have known of the defect and has failed to effect a repair thereof or to warn the workman. (*Miller* v. *Pacific Constructors, Inc.,* 68 Cal.App.2d 529, 545 [157 P.2d 57].)

■ Pursuant to the foregoing doctrine the jury was warranted in finding that appellant was negligent and that its negligence proximately caused respondent's injuries. The record disclosed ample evidence to substantiate the jury's determination. Appellant invited respondent to work upon its premises and furnished him with its own instrumentality which proved to be in disrepair. That the defect was not readily apparent is established by the fact that the faulty cable was subjected to the usual inspection before use, once by appellant's employee, McGee, in the presence of the crew foreman, and again by the latter's crew on the day of the accident. When on the latter occasion it was scraped with a knife, shiny steel appeared beneath the rust. It cannot be said that the rust covering the cable was itself an indication of imminent peril. Many witnesses testified that all cables in the area accumulate rust after short exposure to the elements. Concededly, appellant may not have known of the dangerous condition of the cable, but on the facts established it cannot be said that the jury was arbitrary in finding that by the exercise of reasonable care appellant could have discovered the peril and thus have prevented injury to any employee. McGee testified that the cable had been hanging in the derrick in excess of five years and to his knowledge had never been greased or oiled against the elements or tested for tensile strength. In addition, there was expert testimony that other operating oil companies serviced their hanging cables every two or three years to prevent corrosion and deterioration. Such lack of diligence to prevent injury to workmen falls below the high standard of care required in employing those who are to work under circumstances involving a high risk to personal safety.

■ Appellant's negligence may not be shifted to respondent's immediate employer. At most, the latter's negligence, if any, would present a case of concurrent negligence which would be no bar to a recovery against appellant. (*Leenders* v. *California Hawaiian etc. Corp.,* 59 Cal.App.2d 752, 758 [139 P.2d 987].) Furthermore, appellant having failed properly to maintain its cable for a period of more than five years,

and having failed to conclude that the mere passage of time itself coupled with inadequate inspection would produce a dangerous instrumentality cannot now be heard to say that it relied upon the cursory inspection of temporary workmen to disclose a latent defect. Of necessity, such an inspection was hasty at best, and as respondent testified, had he known how long the cable had hung in the open derrick he might have known of the danger. Thus though there was an assumption of the risk disclosed by his inspection, there could be no assumption of a risk not so disclosed. No one can be said to have assumed a risk when he had no knowledge of the peril involved.

In asserting that the court should have granted each motion made by it at the trial, appellant puts much stress upon its claim that respondent knew as much about the defective cable as appellant knew and with such knowledge freely elected to use it. This may be conceded, but the argument misses the point that the duty of appellant was to know intimately the true condition of its own appliances and to relay such information to workmen who were to decide whether or not to make use thereof. It was for the trier of facts to determine whether such delinquency in duty constituted negligence. Neither fact nor inference is suggested to show that the court erred in permitting the jury to resolve that question and in abiding by its implied findings.

Appellant suffered no prejudice by the court's refusal to submit to the jury special interrogatories requested by appellant. Such procedure is entirely within the discretion of the trial court and is therefore not ground for reversal. (*King* v. *Schumacher*, 32 Cal.App.2d 172, 183 [89 P.2d 466].)

Appellant assigns as prejudicial the court's rejection of 40 instructions it offered. Nine of the rejected instructions pertain to the question of assumption of risk and each repeats in various ways the contentions of appellant. The court instructed the jury that ''plaintiff in working for his employer assumed the risk of those dangers normally incident to the occupation in which he voluntarily engaged.'' This instruction is a correct statement of the law. Its repetition in the phraseology of appellant's counsel could not enlarge its merit. Still other instructions were refused because they applied to issues which had become moot by virtue of the dismissal of the second cause of action. Various arguments are advanced to demonstrate that prejudicial error resulted from the court's rejection of 30 other instructions, but without avail. All the

rejected instructions except those discussed hereafter were merely iterations of various instructions given by the court in its lengthy charge which amply covered all the issues in the case. A careful reading of the entire charge fails to reveal any abuse of discretion in rejecting the proffered instructions.

Using appellant's enumeration, instructions 2, 5, 6, 7, 11, 15, and 28 directed the jury to make findings favorable to appellant when in fact the pertinent evidence was in dispute. Clearly, such proposed instructions would have been error since the court would thereby have arbitrarily assumed the function of the jury.

Instructions 16 and 17 like others rejected by the court would have told the jury in effect that respondent could not recover if he relied upon the inspection and assurances of his crew foreman as to the safety of the cable. Such a contention overlooks the fact that the crew foreman's inspection and assurances of safety, if any, were predicated upon the information imparted to him by appellant's superintendent. That inspection failed to disclose any patent defect, in the absence of which it could reasonably be assumed that the cable was fit for use. But such inspection would not, nor was it intended that it should, disclose any latent defect. Respondent had a right to assume that he would be provided with a reasonably safe place to work, and with reasonably safe instrumentalities. (*Emery* v. *Pacific T. & T. Co.*, 43 Cal.App.2d 402, 409 [110 P.2d 1079].)

Appellant's failure to supply safeguards cannot now be cured by the assertion that respondent freely accepted what was supplied. Had the accident resulted from a defect in the apparatus that was readily apparent on reasonable inspection such a contention might be advantageous to appellant. But a reasonable inspection failed to disclose the detorioration which caused the accident. This condition should have been known by appellant from its knowledge of the history of the cable and its lack of proper maintenance.

Instruction 23 was also properly rejected by the court. It told the jury that if there was no contract requiring appellant to furnish equipment, and Harbor Production Company used the facilities available, as to which no representation of safety was made, there could be no recovery. Such a proposed instruction overlooks the doctrine of *Miller* v. *Pacific Constructors, Inc.*, 68 Cal.App.2d 529, 545 [157 P.2d 57], to

wit, that an employer is obliged to furnish reasonably safe premises and instrumentalities for his employees.

Appellant's final contention that the amount of the verdict was excessive fails to take into consideration the extensive medical testimony as to the nature and permanence of respondent's injuries. No prejudice or passion having been shown in arriving at the amount, it cannot be said to be excessive. (*Walker* v. *Adamson,* 9 Cal.2d 287, 290 [70 P.2d 914].) The current value of the dollar precludes a comparison of an award now for personal injuries with the amounts allowed for similar injuries in the prewar days. The true value of the sum recovered is to be determined by its power to obtain the necessaries of life. (*Kircher* v. *Atchison, Topeka & Santa Fe Railway Co.,* 32 Cal.2d 176, 187 [195 P.2d 427] ; *Butler* v. *Allen,* 73 Cal.App.2d 866, 870 [167 P.2d 488] ; *Nason* v. *Leth-Nissen,* 82 Cal.App.2d 70, 73 [185 P.2d 880].)

The judgment is affirmed.

McComb, J., and Wilson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 4, 1949.