[Civ. No. 4114.   Fourth Dist.   Oct. 31, 1950.]

JESSE THOMAS MARTIN et al., Appellants, v. FOOD MACHINERY CORPORATION et al., Respondents.

Victor C. Rose, Alfred M. Klein and Karl Lynn Davis for Appellants.

Thompson & Colegate for Respondents.

GRIFFIN, J.—This is an action by two workmen for damages for personal injuries suffered by them as a result of a fall from a scaffold located on the premises of defendant corporation.

Defendant was constructing a building in Riverside. Through its own employees, it constructed the frame for the walls of the building and affixed "celotex" to the frame after its construction. About two weeks prior to the date of the accident, the defendant corporation, through certain of its employees, constructed a scaffold adjacent to the building, and its employees used it in connection with the construction work they were doing. The material used for the scaffold was selected by an employee of defendant from a pile of lumber located on its premises.

One Emtman, a general contractor, contracted with defendant corporation to do the lathing and plastering on the outside of the frame or wall on a cost-plus basis. The general contractor let subcontracts for the performance of this work. The lather used the scaffold constructed by the defendant corporation, without mishap. The plasterer then used it in connection with his work. The evidence is that it is a custom for tradesmen and workers, when following one another, to use the scaffold already constructed. On November 6, 1944, the plasterer told Emtman that he would no longer go up on the scaffold because it was not constructed for the safe use of a plasterer due to the increased weight of material required for that work. Plaintiffs, employees of Emtman, were then directed by their foreman to further brace the scaffold so it could be used by the plasterers. Plaintiffs went to the top level and strengthened it. They then went to the 16-foot level for the purpose of strengthening the 2 x 12 plank used as a platform at that level. Before going out on it plaintiffs tested the plank by placing some weight on it and looked at it for the purpose of determining whether there were any defects in the plank. It appeared to be all right to them and they both stepped out on it at the same time. It broke, causing them to fall to the concrete pavement 16 feet below, resulting in serious injuries to them. Although the evidence shows that this 2 x 12 plank was reinforced by either a 2 x 4 or 2 x 6 "strong-back" attached to the underside, plaintiffs testified they did not observe its existence. Immediately after the fall it was discovered that the plank had knots in it near the place where it broke and that the plank

was cross-grained, resulting in its breaking and splitting on a bias. Defendant produced evidence that one of the plasterers used this particular plank for three days prior to the accident; that at times he would have as much as 250 pounds of mortar on the board in addition to the weight of himself and his helper, and that it withstood that weight. Defendant's employee, who erected the scaffold, testified that he and four men worked on it shortly after it was constructed without its breaking.

This action was brought by plaintiffs against defendant corporation under the theory that they were invitees of defendant and it was liable to them for their injuries. Defendant, in its answer, denied negligence on its part, denied generally the allegations of the complaint, and alleged contributory negligence on the part of plaintiffs. After all the evidence was in, the trial court directed a verdict in favor of defendant corporation. Plaintiffs appeal from the judgment that followed.

The evidence in this case is to the effect that the proximate cause of this accident was the breaking of the plank located at the 16-foot level. It shows that this plank had knots and cross-grain in it, which caused or contributed to the breaking of the plank; that such defects were latent and not apparent to the eye; and that defendant's employees placed the plank involved on the scaffold. It is plaintiffs' contention that if this plank had been properly inspected by defendant prior to the placing of it as stated, defects such as knots and cross-grain could have been discovered; that since the evidence shows that plaintiffs were business invitees of the defendant while using this scaffold, defendant was liable, citing *Oldham* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 85 Cal.App.2d 214 [192 P.2d 516]; *Moran* v. *Zenith Oil Co.*, 92 Cal.App.2d 236 [206 P.2d 679]; *Biondini* v. *Amship Corp.*, 81 Cal.App.2d 751 [185 P.2d 94]; and *Devlin* v. *Smith*, 89 N.Y. 470 [42 Am.Rep. 311].

Defendant contends that there was no evidence that would justify a finding that plaintiffs were invitees of defendant on the scaffold at the time of the accident and that plaintiffs' right of recovery was dependent upon the establishment of such a status, citing *Baddeley* v. *Shea*, 114 Cal. 1, 7 [45 P. 990, 55 Am.St.Rep. 56, 33 L.R.A. 747]. It is argued that although it might be that plaintiffs were invitees *upon the premises,* the basic issue in the case is whether they were invitees of defendant *on the scaffold* at the time of the acci-

dent and thus owed a duty of inspection for latent defects; that the law governing the duties of a supplier of chattels is separate and distinct from the law governing the duties of a land occupier, citing Restatement of the Law of Torts, under "Liability of Persons Supplying Chattels for the Use of Others," chapter 14, page 1037; and "Liability for Condition and Use of Land," set forth in chapter 13, page 888. It is also argued that employees of an independent contractor who use a chattel with the permission of the owner of the chattel, and on his premises, while carrying out a contract with the owner are not *ipso facto* invitees as to that chattel and therefore the owner owed no duty of inspection; that they only hold that status and are owed that duty if it can also be shown (1) that the owner was *required* to furnish the chattel to the independent contractor under the terms "express or implied" of the construction contract entered into between the independent contractor and the owners; or (2) that the purpose for which the chattel is to be used is directly related to the owner-supplier's business; or (3) that at some time subsequent to the making of the contract the owner-supplier *insisted* that the independent contractor use the chattel; or (4) that it was absolutely necessary for the independent contractor to use the particular chattel in order to carry out the terms of the construction contract; that without such a showing the employees of the independent contractor can only recover from the owner-supplier for injuries sustained as the result of a latent defect in the chattel if the owner-supplier had *actual knowledge* of the defect at the time when the chattel was transferred to the independent contractor, and there is no evidence in the record that defendant had such knowledge, citing 44 American Law Reports 1078, which cites as authority for the rule *International Agricultural Corp.* v. *Slappey*, 261 F. 279; *McCarthy* v. *Young*, 158 English Reprint 136; *Pingree* v. *Leyland*, 135 Mass. 398; *Gagnon* v. *Dana*, 69 N.H. 264 [39 A. 982, 76 Am.St.Rep. 170, 41 L.R.A. 389]; *Fay* v. *German General Benevolent Society*, 163 Cal. 118 [124 P. 844]; and *Davis* v. *Cam-Wyman Lumber Co.*, 126 Tenn. 576 [150 S.W. 545].

It is claimed by defendant in the instant action that there is no evidence of such a contractual agreement, express or implied, but only of permissive use, at best, and that the furnishing of the scaffolding was a gratuitous one and governed by the rules applicable; that those rules only imposed

upon the supplier the duty to warn the user of latent defects in a chattel *known* to the supplier, and do not require him to inspect for such defects.

Plaintiffs contend that there was an implied contractual agreement that the owner was to furnish the scaffolding for the plastering work since it was the general custom, of which defendant and its employees had knowledge, to use a scaffold already up and placed there by the owner of the premises instead of tearing it down and then building a new one in order to do the lathing and plastering.

It is true that no one directly testified that the general contractor asked the defendant corporation about its use, and there is no evidence that the defendant corporation had any actual knowledge of any defective condition in the plank or that its attention was ever called to such defect. There is evidence that the general contractor was told that the scaffolding was not safe for the weight expected to be applied to it by the plasterer. The question of the intention of defendant as to whether or not the scaffolding erected by it should be used not only by its employees but by the general contractor and his employees, and such subcontractors and their employees as the general contractor might employ, was a factual question for the jury to determine.

The question as to whether or not the plaintiffs were invitees, under the facts presented, was a question of fact for the jury to determine. (*Biondini* v. *Amship Corp., supra*; *Buckingham* v. *San Joaquin Cotton Oil Co.*, 128 Cal.App. 94 [16 P.2d 807].)

These questions were thoroughly discussed in *Coughtry* v. *Globe Woolen Co.*, 56 N.Y. 124 [15 Am.Rep. 387], cited in 44 American Law Reports 1049, section 27, as the leading authority with respect to this doctrine. There the general rule of the American courts is stated to be that a contractee who agreed to provide a contractor with a particular instrumentality for the purposes of the stipulated work is ordinarily liable for any injury which a servant of the contractor may sustain, during the progress of the work, by reason of a defect which was known to the principal employer, or which he might have discovered by the exercise of reasonable care, at the time when the instrumentality was turned over to the contractor. This is the rule applied in this state. (*McCall* v. *Pacific Mail Steamship Co.*, 123 Cal. 42 [55 P. 706].) In that case it held that a contractor can be held liable to his employee for injury resulting from defective materials furnished by the principal

only when he has a right of selecting or rejecting materials so furnished, and that he will be presumed to have the right of selection or control unless by the terms of the contract such right is reserved to the principal. This question was likewise a matter for the determination of the jury.

The case of *Coughtry* v. *Globe Woolen Co., supra,* involved the fall of a scaffolding erected in pursuance of a stipulation requiring the defendant to furnish it without expense to the contractors, resulting in the death of one of the contractor's servants. The lower court sustained a nonsuit on the theory that the only duty resting on the defendant owner in respect to the scaffolding arose out of its agreement with the contractors, and that it was only liable to them for injury arising from negligence in its construction. The court of appeals took a different view of the case, saying:

"In coming to this conclusion, the learned court do not appear to have considered the facts that the scaffold was erected by the defendant upon its own premises for the express purpose of accommodating the workmen who should be engaged in putting a cornice on the defendant's building, under the direction of Osborn & Martin, with whom the defendant had contracted for such cornice; that the scaffold was upward of 50 feet from the ground, and unless properly constructed would be a most dangerous trap, imperiling the life of any person who might go upon it; *that by placing it where they did, on their own premises, for the use of the workmen, they not only licensed, but invited, them to go upon it, and impliedly held out to them that it was a safe structure, or, at least, that proper care had been used in its erection.* These facts did, we think, impose a duty upon the defendant toward any person who should be invited or licensed by it to go upon the structure, to use proper diligence in its construction and maintenance; *and this duty existed independently of anything contained in the contract* with Osborn & Martin. All that was, in fact, said in that contract concerning the scaffold was that, if stagings should be required in putting up the cornice, they should be furnished without expense to Osborn & Martin. *If the contract had been silent as to stagings, but they had been put up by the defendant before making any contract with Osborn & Martin, and they and their workmen had been invited to use such existing stagings, the case would not be materially varied.* . . . Being conceded to be its own structure, furnished by it for use, the duty of due

diligence in its construction arose not merely out of the contract to furnish it, but from the fact that the defendant did actually furnish it for the express purpose of enabling and inducing the men who were to do the work to go upon it. It is evident from the nature and position of the structure that death or great bodily harm to those persons would be the natural and almost inevitable consequence of negligently constructing it of defective material or insufficient strength. It was clearly the duty of the defendant and its agents to avoid that danger by the exercise of proper care.''

As was said in 44 American Law Reports, pages 1050-1051, ''*This duty was independent of the obligation created by the contract.*'' The case of *Mulchey* v. *Methodist Religious Soc.*, 125 Mass. 487, is cited, in which case the court approved an instruction to the effect that inasmuch as the defendants assumed the duty of furnishing this staging upon which this work was to be done by the contractor and his workmen, they undertook to furnish a safe staging for the purpose, and it made no difference to the plaintiff in this case whether they did it by letting out the job to a contractor, or by employing persons to do the work by the day.

After reciting the holding in the several states in reference to the liability of the owner being based upon the contract, the court, in *McCall* v. *Pacific Mail Steamship Co.*, *supra*, concludes that in California such liability is based upon ''the ground of the failure of the principal to exercise the ordinary care which is due to everybody, without regard to contract, under the principles announced in sections 1708, 1714 and 3281 of the Civil Code.''

Restatement of the Law of Torts, page 1039, section 388, cites the rule that:

''One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

''(a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied;

''(b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so."

In *Oldham* v. *Atchison, Topeka & Santa Fe Ry. Co.*, *supra*, it was held that it was not necessary to show actual knowledge of a dangerous condition in order to make out a prima facie case of negligence but where it could be reasonably inferable that the condition was created by the employees of the company, the management was charged with notice thereof. It quotes from *Miller* v. *Pacific Constructors, Inc.*, 68 Cal. App.2d 529, 545 [157 P.2d 57], as follows:

"The general rule in that regard is that an owner or occupier of premises, who, by invitation express or implied, whether the invitation is pursuant to a written contract or otherwise, induces, or knowingly permits, a workman to enter the premises for the performance of duties mutually beneficial to both parties is required to use reasonable care to protect the workman by supplying him with a reasonably safe place in which to work and to furnish and maintain appliances in connection therewith which are reasonably safe for the purposes embraced therein."

See, also, *Hatfield* v. *Levy Brothers*, 18 Cal.2d 798, 806 [117 P.2d 841]; and *Moran* v. *Zenith Oil Co.*, 92 Cal.App.2d 236 [206 P.2d 679], holding that where one employed to do work on premises for the benefit of the owner thereof is injured as the result of a latent defect in an appliance furnished by such owner, the employee's acceptance of the appliance does not necessarily relieve the owner of liability for his injury if, in the exercise of reasonable care, he should have discovered the defect. It was likewise there held that it is a question of fact whether the failure of an owner of premises to discover latent defects in an appliance furnished by such owner for the performance of such work on such premises constitutes negligence.

ORDER No. 1118, Construction Safety Orders of the Industrial Accident Commission, then in effect, and of which courts take judicial notice (*Campbell* v. *Fong Wan*, 60 Cal. App.2d 553 [141 P.2d 43]) provided that:

"(b) All lumber used in the construction of scaffolds shall be Douglas Fir not less than No. 1 Common or material of equal strength, and such lumber shall be sound, straight-grained, free from such defects as cross-grain, shakes, large

and loose knots, dry rot, large checks, brashness or worm holes . . .

"(c) The minimum size of planks and maximum distance between supports for respective plank sizes shall be given in the following table: . . ." 2 x 12 with a span of 12 feet allowed.

The evidence shows that the plank involved broke on the bias for a distance of approximately three feet; that the distance between spans was between 18 and 20 feet, but that the plank had a 2 x 4 or 2 x 6 "strong back" extending within a few feet of its length. Plaintiffs testified that they did not notice any strong back attached to the plank. Whether there was a sufficient compliance with the *minimum* requirements of the statute in this respect was likewise a question of fact for the jury.

If plaintiffs were invitees of the owner of the scaffold as erected by it, and if it was the purpose of defendant to furnish such scaffold for their use in connection with the work to be performed by them, and if the prerequisites are established, the res ipsa loquitur doctrine would be applicable. (*Biondini* v. *Amship Corp., supra.*)

We are not here reviewing an order granting a new trial on the question of the insufficiency of the evidence. The trial court's power and discretion in that case is not as limited as in the case of the granting of a directed verdict. ██ ██ The rules here applicable are the same as would apply to the granting of a nonsuit, i.e., it may be granted only when, disregarding conflicting evidence and giving to plaintiffs' evidence all the value to which it is legally entitled, indulging in every legal inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such verdict were given. (*Docherty* v. *Key System*, 80 Cal.App.2d 888 [184 P.2d 33] ; *Biondini* v. *Amship Corp., supra.*)

██ Upon consideration of the entire record and of the authorities governing courts in passing on motions for directed verdicts, we are of the view that plaintiffs' evidence was sufficient to require submission of the case to the jury and that the judgment should be reversed.

Judgment reversed.

Barnard, P. J., concurred.