[Civ. No. 16361. First Dist., Div. One. June 10, 1955.]

JOHN RODIN et al., Appellants, v. AMERICAN CAN COMPANY (a Corporation) et al., Respondents.

Forrest M. Greenberg and Miller, Kroloff & Brown for Appellants.

Barfield & Barfield and Roos & Jennings for Respondents.

BRAY, J.—A judgment of nonsuit in favor of all defendants based upon plaintiffs' opening statement was entered. Plaintiffs appeal.

### QUESTIONS PRESENTED

1. Did the opening statement show a cause of action against either defendant: (a) For negligence? Corollary to this question—was res ipsa loquitur applicable? (b) For violation of express rules of law?

2. Did the trial court abuse its discretion in denying plaintiffs' request to enlarge upon the opening statement?

### RECORD

Each plaintiff brought an action against all defendants for personal injuries predicated, in a first count, on defendants' alleged negligence, and in a second count on defendants' alleged wilful misconduct through failure to comply with certain safety orders of the Industrial Accident Commission. The gist of plaintiffs' opening statement follows. Defendant American Can Company entered into a contract with defendant Larsen and Larsen, Inc., general contractors, for the construction by the latter of a plant for the former at Stockton. Defendant Larsen let a subcontract to Pahl-Harry Company, plumbing contractors, for the plumbing work.

Plaintiffs were employees of the latter company and at the time of the accident were working on this particular job. Their foreman instructed them to repair some pipes at the top of the building. Defendant Can Company owned a portable elevator or hoist, called a "telescoper." It is electrically operated. One of the employees of defendant Can Company had given permission to defendant Larsen and Pahl-Harry Company to use it. The Can Company not only gave such permission but saw employees of the two mentioned companies actually using it. Defendant Larsen likewise gave permission for its use by Pahl-Harry employees and saw plaintiffs using it. It did not comply with the safety rules of the Industrial Accident Commission in that it lacked several devices thereby required. Plaintiffs had used the elevator once or twice before but had not been instructed how to use it. To get to the pipes which needed repairing, plaintiffs moved the elevator into position. They then went up in the elevator without any difficulty. They finished their work there (apparently standing on the elevator platform) and started to descend. The elevator is operated by three buttons. One is pressed to go up, one to come down, and a third to stop. As the elevator descended it hit one of the girders on the building. Plaintiff Rodin yelled "Stop it." Plaintiff Kelley pressed the "stop" button. It would not work. There was no emergency equipment as required by law to take care of the situation. Although plaintiff Kelley pressed the "stop" button the elevator kept on going down and pressing against the girder. Finally the elevator fell over backwards, throwing both plaintiffs 18 or 20 feet to the concrete floor, seriously injuring both. Although plaintiff Kelley tried vainly to stop the elevator, the equipment did not work. There should have been emergency equipment provided. Neither the owner, defendant Can Company, nor the general contractor, defendant Larsen, provided any operator to run the elevator, nor were the men who were using it given any instructions, but were left on their own in its use. The facts related will show negligence and a wilful failure to comply with the section of the law applying to this type of equipment.

1. WERE CAUSES OF ACTION STATED?

(a) *Negligence.*

(1) *Against defendant American Can Company.*

It owned the telescoper. The complaint charges that it and the other defendants so carelessly and negligently did "keep,

maintain, control and operate" the telescoper "as to cause" plaintiffs "to be hurled from said elevator and onto the pavement . . ." In the opening statement it is stated that defendant Can Company owned the telescoper, gave permission to both defendant Larsen and plaintiffs' employer Pahl-Harry Company to use it, and saw employees of the two companies using it. Leaving aside the question of compliance with safety rules, which will be discussed later, the statement charges the accident to the failure of the elevator to stop when the proper button was pressed after it struck a girder. There is no claim that defendant Can Company knew of the defective condition of the elevator, if it was defective. Unless res ipsa loquitur applies there is no showing that defendant did "keep, maintain, [or] control" the machine negligently. The evidence shows that it did not "operate" it.

Primarily, what duty did defendant Can Company owe plaintiffs? That duty is stated in Restatement of Torts, section 388, page 1039:

"One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

" (a) knows, or from the facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied;

" (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and

" (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so."

See *Martin* v. *Food Machinery Corp.*, 100 Cal.App.2d 244 [223 P.2d 293], where the above rule was applied to the owner of a building under construction, who built a scaffold adjacent to it, which broke, injuring the plaintiffs who were employees of the general contractor.

Applying the rule to the facts of our case, it is obvious that there is no showing (in the absence of res ipsa loquitur) of the requirements of (a), (b), or (c). There is no showing that defendant Can Company knew or should have known

that the machine was dangerous or likely to be dangerous. There is no showing of what was wrong with the telescoper.

■ Another way of expressing defendant Can Company's duty here is the following from *Miller* v. *Pacific Constructors, Inc.*, 68 Cal.App.2d 529, 545 [157 P.2d 57]: "The general rule in that regard is that an owner or occupier of premises, who, by invitation express or implied, whether the invitation is pursuant to a written contract or otherwise, induces, or knowingly permits, a workman to enter the premises for the performance of *duties mutually beneficial to both parties,* is required to use reasonable care to protect the workman by supplying him with a reasonably safe place in which to work and to furnish and maintain appliances in connection therewith which are reasonably safe for the purposes embraced therein. [Citation.]" (Emphasis added.)

Here the statement contained no showing that the telescoper as furnished by defendant was not reasonably safe for the purpose for which it was intended to be used.

Res Ipsa Loquitur.

This brings us to the question of whether res ipsa loquitur applies, for if it does, then it would be the duty of defendant to explain the cause of the accident.

■ The conditions under which res ipsa loquitur applies are: (a) "There is a basis of experience, either common to the community or brought out in evidence, from which it may reasonably be concluded that the accident is of a kind which does not ordinarily occur unless someone has been negligent." (b) "It must be caused by an agency or instrumentality within the exclusive control of the defendant." (c) "It must not have been due to any voluntary action or contribution on the part of the plaintiff." (Prosser, 37 Cal.L.Rev. 233; Prosser on Torts, p. 295; *Ybarra* v. *Spangard,* 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258].)

Where these conditions present here? We think they were. (a) Ordinarily an elevator, even a portable one (this had devices to fasten the elevator shaft to the ground so that the structure will not move), properly operated, will stop when the "stop" button is pressed. Even though the elevator struck a girder, it should respond to the pressing of the "stop" button unless the girder struck some part of the mechanism connecting with the "stop" button. Inasmuch as under the nonsuit rules we must indulge in every reasonable inference from the plaintiffs' statement favorable to

them, and because plaintiffs were later denied the opportunity to amplify their statement, we must assume that the striking of the girder did not affect the "stop" button mechanism. Therefore the owner and supplier of the telescoper must explain what caused the "stop" button to fail to work. A situation similar to what happened here occurred in *Kiernan* v. *Herbert M. Baruch Corp.*, 20 Cal.App.2d 289 [66 P.2d 748]. There, under one version of the accident it was caused by a piece of marble which was being held by the plaintiff while riding in a construction elevator, catching on the timber of the shaft. The elevator dropped before it could be stopped with the brake. The court stated that the evidence left in doubt whether the operator of the elevator was negligent or the apparatus failed. It was then held that the doctrine of res ipsa loquitur was properly applied.

(b) The elevator was in the exclusive control of defendant Can Company. Even though it had been turned over to the use of Larsen and Pahl-Harry Company, the control of the elevator itself was in the Can Company. ■ Control, in the sense used in the doctrine, does not mean whoever happens to be occupying the machine at the particular time. It means control in the sense of who has authority to authorize its use. The Can Company had that control, even though it shared it with Larsen. In *Biondini* v. *Amship Corp.*, 81 Cal. App.2d 751 [185 P.2d 94], we said concerning res ipsa loquitur (pp. 767-768) : "The law does not prohibit the application of the doctrine against two or more defendants where there is joint control. [Citations.] It was for the jury to say whether either or both of these defendants had 'control' of the scaffold, and if it should find that either or both had such control it should be instructed that the doctrine under discussion is applicable to that defendant or defendants."

(c) As stated before, if the striking of the girder was not the cause of the stop mechanism failing to work (and we must assume for the purposes hereof that it was not) then the accident was not due to the voluntary action or contribution of plaintiffs.

■ It was apparent from plaintiffs' opening statement that a cause of action against defendant Can Company was stated.

(2) *Against Larsen.*

■ Larsen's duty is expressed in the following statement from *Biondini* v. *Amship Corp., supra,* 81 Cal.App.2d 751,

where a scaffold built by the general contractor gave way, injuring the plaintiff, an employee of a subcontractor: "A company may expressly or impliedly adopt an appliance of another company, and invite others to use it, and, if they do, the company owes to such invitees a duty to exercise reasonable care to see to it that such appliance is safe." (P. 763.) (See also *Miller* v. *Pacific Constructors, Inc., supra,* 68 Cal. App.2d 529.) In their statement plaintiffs base their claim against Larsen upon the fact that Larsen, being the general contractor, and having undertaken jointly with defendant Can Company to supply the telescoper, and having given Pahl-Harry Company employees permission to use it, came within the above mentioned rule. However, there was nothing in plaintiffs' statement unless res ipsa loquitur applies to show that the appliance was not safe, nor that Larsen had failed to exercise reasonable care to see that the appliance was safe.

But res ipsa loquitur does apply. Under plaintiffs' statement, Larsen, as general contractor, having jointly with defendant Can Company furnished to plaintiffs' employer the telescoper, and owing to the latter and his employees the duty of exercising reasonable care to see that the appliance was safe, was in joint control with defendant Can Company. As was said in the above quotation from *Biondini* v. *Amship Corp.,* 81 Cal.App.2d 751, 768 [185 P.2d 94], it was for the jury to determine whether this was true and if true to apply the doctrine. The statement shows that both defendants furnished the appliance expressly or impliedly for the use of the Pahl-Harry Company employees. The failure of the elevator to stop threw the burden on the respective defendants to explain the failure and to show it was not due to its or their negligence.

The facts as related, raising as they do the doctrine of res ipsa loquitur, showed prima facie a duty on the part of the defendants to reasonably protect the plaintiffs against the danger and injury complained of, their failure to do so, and that the injuries were sustained as a result of that omission.

*Hard* v. *Hollywood Turf Club,* 112 Cal.App.2d 263 [246 P.2d 716], relied upon by defendant Larsen, is not applicable. There the defective scaffold was supplied by the plaintiffs' employer, a subcontractor, and not by the general contractor. Here it is alleged in the complaint and stated in the opening statement that it was supplied by Larsen, the general contractor. The Hard case holds that a general contractor "is

not liable for injuries caused by defective scaffolds or other instrumentalities *unless he has supplied them.*'' (P. 275; emphasis added.) Likewise, in *Hayden* v. *Paramount Productions, Inc.,* 33 Cal.App.2d 287 [91 P.2d 231], the general contractor did not supply the instrumentality which caused the injury to the subcontractor's employee.

(b) *Violations.*

Section 7301, Labor Code: ''No elevator shall be operated in any place of employment in this State unless a permit for the operation thereof is issued by the division, and unless such permit remains in effect and is kept posted conspicuously *in the elevator car.*'' (Emphasis added.) Section 7200 defines a ''construction elevator'' as including ''any means used to hoist persons or material of any kind on a building under course of construction, when operated by any power other than muscular power.'' In view of the language of section 7301 and of the separate reference in section 7200 to construction elevators, it is obvious that section 7301 does not refer to the type of elevator used here. The telescoper is a movable machine consisting of an electrical apparatus for elevating a railed platform which is attached to it. This platform may be raised to the height of the machine. From this platform workmen (apparently no more than two could occupy it at the same time) may stand to work on any portion of the building within reach, or they may step off it onto any portion of the building reachable. It may be moved around inside or outside the building and has clamps to brace it against the floor or ground.

It is obvious that it is a ''means'' operated by power other than muscular ''to hoist persons or material of any kind on a building under course of construction.'' Because of the word ''on'' in the definition, defendants would have it apply only to hoists *attached* to some portion of the building. But it is not the hoist which is to be ''on'' the building. It is persons or materials which are to be hoisted ''on'' the building. It is contended that the telescoper type of hoist was not intended by section 7200 because (1) sections 7201, 7202 and 7203 require a system of signals and assume an operator of the hoist, and (2) because the Labor Board has provided certain requirements which obviously were not intended for this type of hoist. (1) While the provisions of sections 7201 through 7203 obviously do not apply to this type of hoist, that fact does not change the clear wording of section 7200 and the obvious intent of the Legislature to consider as

construction elevators all power hoists of men and materials used in the construction of a building. The definition is a broad one, and a reasonable interpretation of sections 7201-7203 is that they apply only to the larger type of hoist requiring signals.

The same thing is true of the regulations in the Administrative Code.* It is obvious that all the regulations do not apply to a telescoper, as some of them are intended only for the type of hoist requiring an operator. ■ Thus the requirement of subsection (b) of section 1541 requiring elevators to be in charge of experienced operators does not apply, but (c), (d) and (h) do apply. (No violation of (h) is claimed.) In fact, it is equally as important to have these protections on a small hoist as on a large one. These subsections provide:

"(c) Every machine used to hoist men shall be equipped with a control that will return to stop position when the hand of the operator is removed from the control lever and which will cut off the power from the machine and apply the brakes when the control lever is in the stop position. Friction gearing or clutch mechanism shall not be used.

"(d) The brake shall be an automatic brake that will be applied in the event the power fails and when the power is shut off. In addition to the above brake, a hand operated or foot brake shall be provided, attached to the drum, capable of holding a fully loaded cage. . . .

"(h) The speed of the 'cage' shall not exceed two hundred feet (200') per minute."

Administrative Code, title 8, article 8, section 1536, provides in part: "(a) No employer shall permit any person to ride in any elevator provided for hoisting material, except when oiling or repairing guides, unless such elevator be constructed to comply with the requirements of section 1541."

While the telescoper strictly speaking has no "cage," it is clear that what is intended is the portion of the hoist upon which the men are elevated,—here, the platform.

■ The telescoper not having the safeguards required by sections 1536 (a) and 1541 (c) and (d), and it being claimed that the absence of these safeguards caused the accident, a cause of action was stated against both defendants supplying

---

*These regulations were promulgated under authority of Labor Code, sections 6500 and 6312. Section 1541, article 9, title 8, Administrative Code, provides that the provisions therein mentioned must be complied with, if any persons are to ride on a construction elevator.

534

the telescoper for the use of plaintiffs and their fellow employees. In *Armenta* v. *Churchill*, 42 Cal.2d 448 [267 P.2d 303], the Supreme Court said, discussing a safety rule of the Division of Industrial Safety (p. 455) : ". . . *its violation would constitute negligence per se* [citations] ; and the question of whether such negligence proximately contributed to the deceased's death would be one of fact for the jury." (Emphasis added.)

2. ENLARGING STATEMENT.

After plaintiffs finished the opening statement, defendants moved for a nonsuit. Considerable discussion between court and all counsel followed. Plaintiffs then referred to the rule in *Martin* v. *Food Machinery Corp., supra,* 100 Cal.App.2d 244, 248, to the effect that a contractee who agreed to provide a contractor with a particular instrumentality for the purposes of the stipulated work is ordinarily liable for injuries therefrom to the employee of the contractor. The court then said that nothing plaintiffs had stated brought this case within the ruling of the Martin case. Thereupon, plaintiffs' counsel asked an opportunity to enlarge his opening statement. More discussion followed. The court then said that if counsel were an inexperienced lawyer the court might permit the statement to be enlarged, but that characterization did not apply to counsel, and then, "Now, I am going to assume that as this case rolls on, you're going to enlarge upon all of that and bring in evidence here to establish these things which you now say the authorities support you in? I am afraid, Mr. Miller, the Court has no alternative but to grant the motion of these defendants." Again counsel requested permission to enlarge on his opening statement.

It is true that at no time did counsel state what matters he desired to state, but he was given no opportunity to do so. The court was exceedingly abrupt with him. ▮ The action of the court on a motion for nonsuit based upon the opening statement is akin to that on a request that a demurrer to a complaint be sustained without leave to amend. ▮ A reasonable opportunity should be given to set up a cause of action if there is one. ▮ While the question of permitting counsel to enlarge his opening statement is one primarily in the discretion of the trial court, that discretion should be exercised with liberality so that a plaintiff who really has a cause of action should not be denied the opportunity to present it to a jury, merely because his counsel did not state in detail all the facts he proposed to prove. Under the

circumstances of this case, the court should have permitted plaintiffs to enlarge their statement.

An order granting a nonsuit upon the opening statement of a party " '. . . can be upheld only where it is clear that counsel has undertaken to state all of the facts which he expects to prove, and it is plainly evident that the facts thus to be proved will not constitute a cause of action. . . .' " (*Bias* v. *Reed,* 169 Cal. 33, 37 [145 P. 516].) Applying that test here, the action of the trial court in granting the nonsuit cannot be upheld.

The judgment is reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Petitions for a rehearing were denied July 8, 1955, and respondents' petition for a hearing by the Supreme Court was denied August 3, 1955. Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.