[Civ. No. 21424.   Second Dist., Div. Three.   June 28, 1956.]

ANTONIO G. NUNGARAY, Respondent, v. PLEASANT VALLEY LIMA BEAN GROWERS AND WARE-HOUSE ASSOCIATION (a Corporation) et al., Appellants.

654

Hunter & Liljestrom and Kenneth H. Clausen for Appellants.

Neil D. Heily for Respondent.

VALLÉE, J.—Appeal by defendants from a judgment for plaintiff entered on a jury verdict in an action for damages for personal injuries alleged to have been sustained as a result of defendants' negligence.

On November 9, 1953, plaintiff, employed by James Brucker, drove a 2½-ton truck loaded with lima beans to the warehouse of defendant Pleasant Valley for the purpose of delivering the beans to the warehouse. The truck had 10 wheels, two in front and eight in the rear; the rear wheels were flexible wheels, i.e., they would be raised above the front wheels if they were on a bump; the body had a bean bed in it made of steel, called a tank. When plaintiff arrived at the warehouse, at the direction of defendant Croker, the warehouse manager of Pleasant Valley, he backed the truck onto a platform at the warehouse where the front end would be elevated by a hydraulic lift so that the beans would slide out of the rear end into a bin just inside the warehouse. Immediately back of the bin and between it and the concrete wall of the warehouse there was a low guard rail along the bean bin made of 1½-inch pipe. Attached to the platform were two 16-inch stationary "steel-concrete" blocks. Trucks were backed onto the platform until the rear wheels came against the stationary blocks. The parts of the stationary blocks against which the wheels rested were angular shaped so that the tires fit into the blocks. Some trucks unloading at the warehouse had an overhang of the body beyond the rear wheels so that when the front end was raised for unloading the rear would extend too far over the bin. When the truck was such that the rear would extend too far over the bin, Croker placed two removable, flat, wooden blocks about 3 or 4 inches wide, 8 or 10 inches long, and about 16 inches high, immediately in front of and against the stationary, angular blocks so as to cause a truck to stand farther ahead on the platform. The wooden blocks were not fastened or secured in any way; they were flat, not angled to fit a tire as were the permanent concrete blocks.

Sometime that day, before Croker directed plaintiff to back onto the platform, he (Croker) had placed the two flat, wooden blocks in front of the two stationary, angular blocks. As plaintiff was backing the truck, he noticed the wooden blocks. They had never been used in unloading the truck he was driving. It had a medium overhang only and could be unloaded without the removable blocks. Plaintiff said to Croker, "How about the blocks?" Croker told him to "Just go back," and he backed the rear dual wheels of the truck against the flat, wooden blocks. Plaintiff testified: "Q. [By Mr. Heily, attorney for plaintiff] : Now, I believe you testified on cross-examination that the blocks appeared, just before you backed up, to be as they had in the past when you backed in there with other trucks. Did you get out of the truck and inspect them? A. No. I just looked to the back through the door. When you go by the ramp, you notice the blocks over there. You notice everything what is in the way. Q. Now, did you particularly notice whether they were in exactly the same position that they are in this photograph designated Plaintiff's 4, or did you pay any particular attention to exactly how they were sloped? A. I noticed the blocks back there. I didn't know whether they were this angle here or this (indicating). I knew that the blocks were back over there, the solid blocks. Q. They just appeared to be back by the solid blocks? A. That is right. Q. You didn't notice what angle they were tipped? A. No, I didn't. Q. And is it then that you mentioned the blocks to Mr. Croker, was it? A. Mr. Croker, I hollered to him, 'How about the blocks there?' Q. And he just waved you back?. A. Motioned back. . . . Q. [By Mr. Clausen, attorney for defendants] : And the only reason then that you ever said anything at all about it, was that you didn't think that they [the wooden blocks] were needed, because the truck wasn't too long? A. They weren't needed. They really weren't needed at all there. Q. That is the only reason that you mentioned it? A. That is right."

Plaintiff also testified: "Q. Now, after you got the truck backed up against the blocks, did you do anything with reference to your brakes? A. You automatically throw your brakes on. You throw your switch off and throw your brakes on your truck and throw your truck in gear. You automatically do it. Nobody instructs you. Q. Is that what you did on this particular occasion? A. I put my brakes on and I don't remember if I threw it in gear or not. Q. Were the brakes

on this particular truck in good working order? A. Very good working order. Q. By the 'brakes' I mean the emergency brakes. A. Very good. They have to be good, because you are checked by the State Highway Patrolman. The truck is checked maybe every day, maybe twice a day.''

After plaintiff had dismounted Croker operated hoisting machinery which was controlled by levers just inside the door of the warehouse next to the bean bin and elevated the front end of the platform and the truck to about a 40-degree angle so that the beans would slide out of the rear end of the truck into the bin. After getting out of the truck plaintiff walked around watching the beans unloading.

When the truck tank was almost empty plaintiff obtained a broom from inside the warehouse, went to the rear of the truck, and with one leg over the low pipe railing at the edge of the bean pit and the other on solid ground behind the railing he was going to start climbing into the truck to sweep beans that remained in the truck into the bean pit and ''just going to put up [his] right hand to the tank of the truck to climb on top of the truck when the thing rolled back.'' Croker was at the levers at the time. While plaintiff was in the position described, the truck started to move backwards, the rear dual wheels ''all of a sudden'' jumped over the wooden and the stationary blocks, rolled back and ''crushed'' plaintiff between the rear end of the truck and the concrete wall of the warehouse, causing the injuries of which he complains.

Plaintiff testified he relied on and followed the instructions of Croker ''in the unloading operation''; Croker ''was in charge of the ramp [platform] and in charge of everything up there''; he relied on Croker's ''judgment as to what to do''; neither Croker nor anyone in charge of unloading operations had ever told him to stay clear of the rear of the truck during unloading operations; it was customary to sweep out the beans as the load ''got down to the point where they were almost finished dumping''; and he at all times in sweeping out the beans climbed over the back of the truck to do it. During the course of a discussion in the absence of the jury the court asked defendants' counsel ''Who was supposed to maintain that place [where the accident occurred]?'' Defendants' counsel replied, ''The defendant.'' Croker testified he ''didn't make any close inspection of the blocks'' as the truck was backing.

The court instructed the jury on the doctrine of res ipsa

loquitur. Defendants assign error. They contend the evidence does not warrant an instruction on the doctrine.

The doctrine has three conditions: 1. The accident must be of a kind which ordinarily does not occur in the absence of someone's negligence. 2. It must have been caused by an agency or instrumentality within the exclusive control of the defendant. 3. It must not have been due to any voluntary action or contribution on the part of the plaintiff. (*Ybarra* v. *Spangard,* 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258]; *Raber* v. *Tumin,* 36 Cal.2d 654, 659 [226 P.2d 574]; *Seneris* v. *Haas,* 45 Cal.2d 811, 823 [291 P.2d 915].) The applicability of the doctrine depends on whether it can be said, in the light of common experience, that the accident was more probably than not the result of the defendant's negligence. (*Seneris* v. *Haas,* 45 Cal.2d 811, 824 [291 P.2d 915]; *Burr* v. *Sherwin Williams Co.,* 42 Cal.2d 682, 687 [268 P.2d 1041].)

"The reason for the application of the doctrine of *res ipsa loquitur,* and the very hypothesis of the doctrine, is that 'ordinarily the one injured is not in a position to know more than that, by some unusual movement of the instrumentality, he was injured, whereas the one who operates the instrumentality should know and be able to explain the precise cause of the accident.'" (*Alexander* v. *Wong Yick,* 25 Cal. App.2d 265, 269 [77 P.2d 476].) "In order that a plaintiff be entitled to the benefit of the doctrine of res ipsa loquitur, he need not exclude every other possibility that the injury was caused other than by defendant's negligence (Prosser, *Res Ipsa Loquitur in California,* 37 Cal.L.Rev. 183, 197-198)." (*Seneris* v. *Haas,* 45 Cal.2d 811, 826 [291 P.2d 915].) "The requirement of control is not an absolute one. Although, as we have seen, the doctrine will not ordinarily apply if it is equally probable that the negligence was that of someone other than the defendant, the plaintiff need not exclude all other persons who might possibly have been responsible where the defendant's negligence appears to be the more probable explanation of the accident. (See *Helms* v. *Pacific Gas & Elec. Co.,* 21 Cal.App.2d 711, 713-714 [70 P.2d 247] [third persons might have tampered with electrolier located on public street]; *Van Horn* v. *Pacific Refining & Roofing Co.,* 27 Cal.App. 105, 108-110 [148 P. 951] [third person might have loosened pipe cap]; Prosser, *Res Ipsa Loquitur in California* [1949], 37 Cal.L.Rev. 183, 197-201.)" (*Zentz* v. *Coca Cola Bottling Co.,* 39 Cal.2d 436, 443 [247 P.2d 344].) A plaintiff may rely on the doctrine even

though he has participated in the events leading to the accident if the evidence excludes his conduct as the responsible cause. (*Simmons* v. *Rhodes & Jamieson, Ltd.*, 46 Cal.2d 190, 194 [293 P.2d 26].)

A permissible view of the evidence meets the several elements of the doctrine. It appears to be conceded the accident satisfies the first requirement. It satisfies the second. From the time plaintiff dismounted, the truck, the platform, the blocks, and the hoisting apparatus were at all times under Croker's exclusive control; and he operated the hoisting apparatus with no supervision from anyone. He alone placed the flat, wooden blocks in place. He alone, by means of levers, lifted the platform and the truck to a 40-degree angle. He was in complete control of the mechanism which regulated the movement of the truck on the platform.

As to the third requirement, there was no evidence of any voluntary action or contribution on the part of plaintiff. Plaintiff had no contact with the truck after he backed it onto the platform against the blocks, set the brakes, and dismounted. There was no evidence that plaintiff did not put the truck in gear. He said he "automatically" did but could not remember about this particular occasion. The truck remained in position at an angle of 40 degrees until it was unloaded. The jury could have inferred that Croker should not have used the flat, wooden blocks, or that they should have been made to fit tires and securely fastened, or that he did not place them in proper position, or that he jerked the hoist lever, or that there was a defect in the hoisting apparatus, or that he lifted the truck higher than necessary. The balance of probabilities suggests negligence on the part of Croker, who was responsible for the platform, the flat, wooden blocks, and the hoisting machinery, rather than that the accident was unavoidable or due to negligence of plaintiff. Defendants, not plaintiff, were in control of the premises.

*Doke* v. *Pacific Crane & Rigging, Inc.*, 80 Cal.App.2d 601 [182 P.2d 284], is on all fours. In that case employees of Acme made and attached a sling to a spark arrester and attached the sling to a hook hanging from the boom of a crane. The operator of the crane, an employee of the defendant Pacific, by use of the crane then lifted the arrester to the top of an incinerator when it dropped, killing an employee of Acme. This court held the doctrine of res ipsa loquitur applied; that the operator of the crane had complete and exclusive control of the machine and its lifting mechanism as

well as the arrester being handled therewith where he was thoroughly familiar with the machine from prior operation and inspection and where he was in a position to observe what took place incidental to the dropping of the arrester that resulted in the death of an employee of the hirer of the crane; that the evidence was sufficient to create an inference of the defendants' negligence; and said that the "plaintiffs should not be deprived of the benefit of the doctrine merely because some agency over which defendants had no control could have caused the accident."

In this connection it is argued the court erred in not immediately following the instruction quoted in footnote 1[1] with the instruction quoted in footnote 2.[2] Several instructions not related to res ipsa loquitur were given between the one quoted in footnote 1 and the one quoted in footnote 2. No doubt it would have been good practice to have given the latter instruction immediately following the prior one, but we do not think the fact that it was not was prejudicial. The instructions are to be considered as a whole, and the court so instructed the jury. ■ The sequence in which instructions are given is a matter in the sound discretion of

---

[1]The instruction reads: "If, and only in the event, you should find that the plaintiff suffered injury proximately resulting from the accident in question, you will be guided, in determining the issue of liability, by the following instruction:

"From the happening of the accident involved in this case, as established by the evidence, there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of the defendants. That inference is a form of evidence, and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendants to rebut the inference by showing that he did, in fact, exercise ordinary care and diligence or that the accident occurred without being proximately caused by any failure of duty on his part."

[2]"In making such a showing, it is not necessary for a defendant to overcome the inference by a preponderance of the evidence. Plaintiff's burden of proving negligence by a preponderance of the evidence is not changed by the rule just mentioned. It follows, therefore, that in order to hold the defendant liable, the inference of negligence must have greater weight, more convincing force in the mind of the jury, than the opposing explanation offered by the defendant.

"If such a preponderance in plaintiff's favor exists, then it must be found that some negligent conduct on the part of defendant was a proximate cause of the injury; but if it does not exist, if the evidence preponderates in defendants' favor, or if in the jury's mind there is an even balance as between the weight of the inference and the weight of the contrary explanation, neither having the more convincing force, then the verdict must be for the defendant."

the trial court, and a very strong showing of prejudice must be made before a reviewing court will hold its discretion abused. (*Manuel* v. *Calistoga Vineyard Co.*, 17 Cal.App.2d 377, 382 [61 P.2d 1204].) The point "borders on the realm of psychology wherein the law seems loath to enter." (*Ritchey* v. *Watson*, 204 Cal. 387, 390 [268 P. 345].) The instructions gave the jury a well balanced statement of the essential legal issues. ■ If defendants were dissatisfied with the sequence in which the instructions were given, it was their duty to say so at the time and thus give the court an opportunity to remedy the claimed defect. They did not do so and they are precluded from raising the question on review.

■ The complaint spelled out in some detail the specific acts of negligence alleged to have caused the accident. Defendants say for that reason the doctrine of res ipsa loquitur is inapplicable. The point is untenable. At the close of plaintiff's case in chief, with the permission of the court, he amended the complaint to allege negligence in general terms. ■ An amendment to a complaint is deemed a statement of the facts existing at the commencement of the action, and takes effect as if it had been originally incorporated in the pleading. (*Hibernia Sav. & Loan Soc.* v. *DeRyana*, 210 Cal. 532, 534, 537-538 [292 P. 632]; *Dieckmann* v. *Merkh*, 20 Cal.App. 655, 657-658 [130 P. 27]; 21 Cal.Jur. 212, § 145.) ■ It has been held that if negligence has been specifically but not generally pleaded by the plaintiff, he may not avail himself of the doctrine. (*Leet* v. *Union Pac. R. Co.*, 25 Cal.2d 605, 617 [155 P.2d 42, 158 A.L.R. 1008].) But if he pleads it both generally and specifically, it has been held he may rely on the doctrine. (*Id.*, 618.) ■ Defendants were not taken by surprise. They were aware plaintiff relied on res ipsa loquitur. Plaintiff requested such instructions and we must assume they were served on counsel for defendants before the taking of testimony. (Rules for Superior Courts, rule 16(c).) The applicability of the doctrine was argued at length on a motion for a judgment of nonsuit. And all evidence was introduced having any bearing on the issue the same as though plaintiff had originally alleged negligence generally.

■ The court gave this instruction:

"You are instructed that Section 3302 of General Industry Safety Orders of the State of California Administrative Code reads in part as follows:

" 'Where bins, bunkers or hoppers are loaded by backing

an automotive truck to one edge there shall be installed bumper stops not less than 10 inches by 10 inches securely fastened in a manner to prevent the truck overrunning the runway.' If you should find from the evidence that the defendants conducted themselves in violation of the section of the General Industry Safety Orders just read to you, you are instructed that such conduct constituted negligence as a matter of law.''[3]

The court also read section 6506 of the Labor Code to the jury.[4] Defendants assign error. The argument is that the Division of Industrial Safety, which promulgated section 3302, ''has only the constitutional authority to make regulations affecting the relationship or [of] employer and employee and that any regulations made by such agency cannot and may not affect third persons.'' The point is untenable. Section 3302 was introduced in evidence. It was specifically held in *Pierson* v. *Holly Sugar Corp.*, 107 Cal.App.2d 298 [237 P.2d 28], in which the same contention was made, that the safety orders of the Division of Industrial Safety are intended not only to protect employees of a defendant corporation but also as safeguards for the public generally against injury or loss of life; and that it is proper, where the facts call for it, to instruct the jury as to such safety orders. (And see *Armenta* v. *Churchill*, 42 Cal.2d 448 [267 P.2d 303], in which it is said that violation of such an order constitutes negligence *per se*; *Rodin* v. *American Can Co.*, 133 Cal.App. 2d 524 [284 P.2d 530]; Lab. Code, § 6307.) *Neuber* v. *Royal Realty Co.*, 86 Cal.App.2d 596 [195 P.2d 501], and *Douglas* v. *Maloney*, 105 Cal.App.2d 284 [233 P.2d 59], cited by defendants, are factually distinguishable.

It is said the court gave these instructions without even reminding the jury that a violation of the law is of no consequence unless they find from the evidence it was a proximate cause of the accident. The court told the jury the burden was on plaintiff to prove not only that defendants were negligent but that such negligence was a proximate cause

---

[3] Orders of the Division of Industrial Safety promulgated pursuant to authority given by sections 6312 and 6500 of the Labor Code.

[4] Section 6506 reads: ''Every person shall comply with every order, decision, direction, rule, or regulation made or prescribed as specified in this part and in any way relating to or affecting safety of employments or places of employment or to protect the life and safety of employees in such employments or places of employment. Every person shall do everything necessary or proper in order to secure compliance with, and observance of, every such order, decision, direction, rule, or regulation.''

of injury to plaintiff; that they should first determine whether Croker was negligent and, if they so found, they should next determine whether that negligence was a proximate cause of any injuries to plaintiff. The jury was adequately instructed on proximate cause. ▇ If defendants felt more detailed instructions should have been given they should have offered them, which they did not do. ▇ Contrary to defendants' argument, section 3302 is directly applicable to the facts of the present case. It is not limited to one backing an automotive truck to the edge of a dock or wharf. The bin in the present case was loaded by backing an automotive truck to one edge.

▇ The next assignment of error is that the court erred in excluding evidence offered by defendants of the absence of prior accidents. Defendants made an offer to make such proof, to which objection was sustained. There was no indication that the conditions were substantially the same or the circumstances similar at all times prior to the accident in question. There was no error. Furthermore, the record contains evidence of absence of prior accidents. ▇ Counsel for defendants asked plaintiff, "Now, on any of these other occasions when this truck has been used to unload and the front had been elevated, had that truck ever moved?" and he answered, "No." Plaintiff's counsel then objected and the court ruled, "The objection is sustained." There was a motion to strike plaintiff's answer but it was not ruled on. The sustaining of the objection did not eliminate the answer which had already been given. (*People* v. *Carmen,* 43 Cal.2d 342, 347 [273 P.2d 521]; *People* v. *Letourneau,* 34 Cal.2d 478, 489 [211 P.2d 865].) Counsel should have insisted on a ruling on the motion. The answer is in the record.[5] We do not decide whether, if the conditions had been shown to have

---

[5]Croker testified in response to questions of his counsel that about 3,000 loads of beans were delivered at the warehouse each year; plaintiff had been hauling beans into the warehouse in prior seasons in addition to this one; the movable wooden blocks had been in use for a number of years before the year that this accident occurred; there was nothing different done on this occasion in the unloading operation than had been done on countless other occasions; these wooden blocks had been used on that particular truck on some occasions prior to that; it was customary to raise the truck to the maximum height; he did not handle that detail any differently this time than he had on prior occasions; on all prior occasions he had raised the lift as high as it would go. Another witness called by defendants testified the truck in question had been used to haul beans to Pleasant Valley warehouse since 1948, and on prior occasions when it was used the movable blocks had been used. The inference counsel sought to have the jury draw, and the one they might have drawn, obviously was an absence of prior accidents.

been substantially the same or the circumstances similar, the evidence would have been admissible.

After the present action was commenced an action was brought by defendant Pleasant Valley against Cal-Farm Insurance Company. In that action defendant Croker filed a complaint in intervention in which he sought to have it adjudged that Cal-Farm was obligated to defend him in the present action. The object of that action was to determine the rights of the parties in respect to two policies of liability insurance, one written by Cal-Farm, the other by United States Fidelity & Guaranty Company. That cause was submitted to the court for decision on a written stipulation of facts. The stipulation was signed on behalf of Croker by his attorneys in the present action. The stipulation stated that if plaintiff in this action were called as a witness in that action he would testify he was directed to back his truck onto the particular platform by Croker. There was nothing in the stipulation to the contrary, nor was it stated that Croker denied he directed plaintiff onto the particular platform. On the trial of the present action Croker, called by plaintiff under section 2055 of the Code of Civil Procedure, testified he did not direct plaintiff to the particular platform, that plaintiff selected it himself. The parties then agreed that the stipulation of facts in the other action contained the statement with respect to what plaintiff would testify, that Croker did not testify in that action, and that no testimony was taken therein. Counsel for plaintiff then asked Croker if he did not receive a judgment in his favor in that action, to which he replied that he did not know. He was then shown what counsel for both sides referred to as the judgment and again asked if he received a judgment in his favor. Defendants' objection was sustained. Counsel for plaintiff offered the document in evidence, to which defendants objected. The following then occurred:

"Mr. Heily [attorney for plaintiff] : This is what I am offering. . . . If counsel will stipulate with me that he did get a judgment in his favor, that would end it.

"The Court: Well, the objection is overruled. You have got to connect it up so that it means something to the jury.

"Mr. Heily: I am still willing to stipulate, counsel.

"Mr. Clausen [attorney for defendants] : I am going to stand on my objection."

The document was then admitted in evidence over defendants' objection. The document was an order for judgment, and not the judgment.[6]

Error is asserted in two respects: first, it is urged that the statement in the stipulation of facts that Nungaray would testify that Croker directed him to the particular platform did not constitute an admission, and second, it is claimed the so-called judgment informed the jury that any judgment against Croker and Pleasant would be paid by insurance companies. The stipulation of facts in the other action was signed by Croker's attorneys. It stated as a fact in that cause that Nungaray would testify Croker had directed him to the particular platform. There was no denial or contradiction in that action of what it said would be the testimony of Nungaray. The omission of a party is admissible in evidence against him. (Code Civ. Proc., § 1870, subd. 2.) ▮▮ So far as admissibility is concerned, there is no difference between direct admissions and those which are incidental. (*Shafter* v. *Richards*, 14 Cal. 125, 126.) ▮▮ The failure to deny the truth of a statement may constitute an admission by silence. (*Estate of Snowball*, 157 Cal. 301, 311 [107 P. 598]; *Estate of Ricks*, 160 Cal. 450, 484 [117 P. 532]; *Baldarachi* v. *Leach*, 44 Cal.App. 603, 605 [186 P. 1060]; *Pleasants* v. *Hanson*, 48 Cal.App. 626, 638 [192 P. 183]; *Kohlhauer* v. *Bronstein*, 21 Cal.App.2d 4, 6 [67 P.2d 1078].) *Estate of Gaines*, 15 Cal.2d 255 [100 P.2d 1055], says there may be admissions other than statements made by the party himself where the statement of the other is adopted by the party as his own, either expressly or by conduct, and observes (p. 262) : ''Familiar examples of this second situation are the *admissions by silence,* where declarations of third persons made

---

[6]The document reads: ''The above entitled action having heretofore been tried and submitted to the Court for its consideration and decision, and the Court, having fully considered the same, and being fully advised, now

''ORDERS that Cal-Farm Insurance Company be obligated to defend the Pleasant Valley Lima Bean Growers & Warehouse Association and Lawrence Croker in the action brought by Antonio G. Nungaray against them in the Case No. 44175, Superior Court in and for the County of Ventura, and the Court further finds that the coverage under the United States Fidelity & Guaranty Company policy to Pleasant Valley Lima Bean Growers & Warehouse Association is secondary to that of the Cal-Farm Insurance Company policy.

''It is further ordered that counsel for Pleasant Valley Lima Bean Growers & Warehouse Association, United States Fidelity & Guaranty Company, and Lawrence Croker, prepare Findings of Fact, Conclusions of Law and Judgment accordingly.''

in the presence of a party give rise to admissions, the conduct of the party in the face of the declaration constituting the adoption of the statement to form an admission. (See 2 Wigmore, Evidence, §§ 1052, 1069, 1071.) It would seem that in the instant case, when appellant repeated the declaration of decedent without challenging it, it became an admission against him.''

In *Dolinar* v. *Pedone*, 63 Cal.App.2d 169 [146 P.2d 237], it is said (p. 176):

''It may be stated as a general rule that a pleading containing an admission is admissible against the pleader in a proceeding subsequent to the one in which the pleading is filed. [Citations.] This is true even on behalf of a stranger to the former action. [Citation.]

''When a pleading is verified by counsel and the client allows it to remain as a pleading in the case so that it contains a solemn admission of record, it should be presumed that the allegations contained therein were inserted by his authority and hence admissible against him in other actions. . . . Under the rule herein enunciated it is always competent for the party against whom the pleading is offered to show that the statements were inadvertently made or were not authorized by him or made under a mistake of fact. Whether such explanation weakens or destroys the force of the statement contained in the pleading, is a proper question for the court or jury, but it only affects the weight, not the admissibility of such pleading in evidence. That California has followed this principle is evidenced by the early case of *Coward* v. *Clanton*, 79 Cal. 23 [21 P. 356], wherein it is stated: 'It should be presumed, where the pleading is filed by the attorney of the party, that such attorney was acting within his authority, and that the pleading should be regarded as the admission of the party, subject to his right to show that, as a matter of fact, the pleading was not authorized by him.' ''

The same principle applies to a stipulation of facts. And it has been held that statements of counsel made prior to the trial (*Bell* v. *Staacke*, 159 Cal. 193, 196 [115 P. 221]), or in argument at the trial (*Scafidi* v. *Western Loan & Bldg. Co.*, 72 Cal.App.2d 550, 561 [165 P.2d 260]), may constitute admissions. ▮ Also a stipulation of liability made by counsel for the defendants in one trial is admissible as an admission in a subsequent trial. (*Gonzales* v. *Pacific Greyhound Lines*, 34 Cal.2d 749, 754 [214 P.2d 809].)

Croker was given the opportunity to make an explanation. He testified he had only heard "a little bit about" the other action; he did not recall anything about a stipulation as to the facts in that action; he talked to his attorneys once; "I deny I showed him how to back up"; they did not call on him to testify in that action; he "didn't know that this representation was agreed upon by [his] attorneys as the facts in that case"; and he did not know that a decision was rendered in his favor in that action. The fact that in the stipulation in the other action the parties to it agreed neither of them would be bound thereby in any other action did not preclude plaintiff from using it as an admission. Plaintiff was not a party to the stipulation, nor a party in that action, and was not bound by that agreement.

The effect of the stipulation in the other action was that it stood as established fact that Croker had directed plaintiff to the particular platform. The stipulation resulted in a judgment in favor of Croker and Pleasant Valley. (See *Pleasant Valley etc. Assn.* v. *Cal-Farms Ins. Co., ante,* p. 126 [298 P.2d 109].) The fact that Croker did not in the other action deny he had directed plaintiff to the particular platform was admissible in this action as an admission. The so-called judgment was admissible to show Croker obtained an advantage by not denying that fact. Defendants' criticism of the evidence goes to its weight rather than its admissibility. Defendants say in their brief that "whether or not Croker, in fact, directed Nungaray to the particular unloading platform involved in the accident seems to be of doubtful materiality in view of the circumstances of this case."

Plaintiff did not inject insurance into the case by introducing the order for judgment in evidence. As noted, counsel for plaintiff on two occasions offered to stipulate that Croker had obtained a judgment in his favor in the other action. Counsel for defendants refused to so stipulate although he knew it to be a fact. Such a stipulation could have been made subject to any objection counsel for defendants desired to interpose. And such a stipulation would have obviated any reference to insurance. Having had the opportunity to keep the subject of insurance out of the case, counsel for defendants cannot now assert error because the order for judgment may have disclosed insurance. When evidence is relevant because it is addressed to a valid issue in the case, it is admissible even though it may incidentally

disclose that an insurance company is interested in the outcome of the litigation. (*McCullough* v. *Langer*, 23 Cal.App. 2d 510, 518 [73 P.2d 649].) And on introducing the order for judgment in evidence, counsel for plaintiff stated he believed it "appropriate to inform the jury that no insurance company is a party to this action." No request was made by counsel for defendants that an instruction on the subject be given.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied July 24, 1956, and appellants' petition for a hearing by the Supreme Court was denied August 21, 1956.