[Civ. No. 23382.   Second Dist., Div. Two.   Dec. 23, 1959.]

BOYD W. HYDE, Appellant, v. RUSSELL AND RUSSELL, INC. (a Corporation), Respondent.

Edwin Silver and Ernest L. Graves for Appellant.

Betts, Ely & Loomis for Respondent.

HERNDON, J.—This action for personal injuries arose out of an accident which occurred on March 23, 1956, when plaintiff fell from a scaffold while engaged in his employment as a welder and steel worker. The sole defendant in the case is Russell and Russell, Inc., a corporation, engaged in the business of renting, leasing, erecting and supplying scaffolding in the construction industry. Plaintiff's employer, Structural Engineering Company, was a subcontractor on a building project on which Diversified Builders was the general contractor.

Defendant Russell and Russell, Inc., supplied to plaintiff's employer the swinging stage scaffold from which plaintiff fell.

Plaintiff charged defendant with negligence in the supplying of the scaffold, and at the trial advanced three theories: (1) that defendant was guilty of negligence as a matter of law in that the scaffold which it supplied to plaintiff's employer failed to conform to the requirements of a safety order promulgated by the Division of Industrial Safety of the State of California; that is to say, that defendant's violation of said safety order constituted negligence *per se*; (2) that in supplying a scaffold which did not meet the specifications of said safety order defendant negligently failed to conform to the reasonable and customary standard of care required of suppliers of suspended scaffolding; and (3) that defendant negligently failed to supply, with the leased equipment, certain clamps which were designed to hold in place the safety backrail of the scaffold.

The verdict of the jury was in favor of defendant, and plaintiff appeals from the judgment entered thereon. The major contention advanced on this appeal is that the trial court erred in its instructions with reference to the applicability and effect of the safety order. The facts essential to an understanding of the determinative issues may be summarized briefly.

Plaintiff's employer needed two swinging scaffolds for use in connection with the steel work called for in its subcontract. The classified pages of the telephone book were consulted and defendant's name was found listed as a licensed purveyor of scaffolding equipment. An officer of plaintiff's employer telephoned defendant's office and talked with defendant's president and general manager who took the rental order for the two scaffolds. Although defendant's principal business related to the supplying of upright scaffolding which is built up from the ground on tubular steel framework, it also held itself out as a dealer in suspended scaffolding.

In filling this order, defendant delivered to the job site two swinging stages equipped with stirrups with side brackets designed for a safety backrail of 2-inch by 4-inch dimensions. The backrails actually delivered, however, were not of 2-inch by 4-inch material but were made of round steel tubing with an outside diameter of 1.69 inches. The cables attached to the stirrups were such that the scaffolds could be suspended at heights of 70 to 75 feet from the ground. It appears to be clear from the record that the rectangular brackets attached to the stirrups were not designed to hold a backrail made of tubular material of the kind actually supplied in this case.

There is a conflict in the evidence as to whether or not defendant supplied certain clamps designed to secure the tubular rail in the brackets at the two ends of the stage.

The scaffold from which plaintiff fell had been assembled and suspended from the building by a fellow employee, who testified that when he was unable to find any suitable device for securing the backrail to the stirrup brackets, he used some Number 9 wire for that purpose. Shortly before the accident, plaintiff requested another fellow employee, a Mr. Miley, to come up on the scaffold to assist him in performing a welding operation. As the two men were changing positions on the scaffold, the left end of the tubular safety rail slipped out of the bracket which previously had held it and plaintiff fell over backward to the ground 10 to 12 feet below.

Plaintiff testified that he had never paid any particular attention to the safety rail and that he had not been conscious of touching it as he exchanged places with his coworker. Another witness testified that he observed the left end of the pipe "fly out of the bracket." Mr. Brownyard, the general manager of Structural Engineering Company, arrived shortly after the accident. He noticed the safety rail dangling from the stage and testified that he would have expected to see a 2-inch by 4-inch wood backrail and that he had never before seen tubing used as a safety rail for this type of suspended scaffolding. Mr. Jepson, a safety engineer for the State of California, testified that the custom and practice in the industry was to use a 2-inch by 3-inch back safety rail of select structural Douglas fir and that it was not the custom and practice to use a tubular metal. The witness said that a rectangular safety rail would develop more friction than a round pipe and that there would be less likelihood of side slippage with the rectangular rail. During the course of Mr. Jepson's testimony, plaintiff offered in evidence a booklet containing the Construction Safety Orders promulgated by the Division of Industrial Safety and requested the court to take judicial notice of one of said orders, to wit, section 1611(m) of the California Administrative Code[1] reading as follows:

"All scaffolds or staging referred to in this order, suspended more than ten feet (10') from the ground or floor, shall have a safety rail of wood or other equally rigid material of sufficient strength, to prevent workmen from falling, and said

[1]Title 8, subchapter 4, section 1611(m), in effect at the time of the events here in issue. The section was amended, effective September 28, 1957, and now appears as section 1660(k).

rail shall be not less than forty-two inches (42″) or more than forty-five (45″) above the platform of such scaffold or staging. The safety rail shall be made of two inch by three inch (2″x3″) material in one piece.''

The foregoing safety order was promulgated pursuant to the specific authority of Labor Code, section 7151, which reads in part as follows:

''If the working platform of any scaffolding swung or suspended from an overhead support is more than 10 feet above the ground, floor or area to which an employee on the scaffolding might fall, it shall have a safety rail of wood or other equally rigid material of adequate strength. *Such rail shall be in compliance with the applicable orders of the Division of Industrial Safety. . . .*'' (Emphasis added.)

Plaintiff requested the trial court to instruct the jury to the effect that if defendant violated the above quoted safety order in supplying the scaffold in question, such violation constituted negligence as a matter of law. The court refused so to instruct the jury, but on its own motion gave the following instruction:

''You are instructed that the provisions of California Administrative Code, Title 8, Subchapter 4, Section 1611(m), and the provisions of Labor Code, section 7151, concerning scaffolds, which have been referred to from time to time during this trial, operate directly to place a duty to provide a safe place to work upon an employer, general contractor or owner of premises upon which equipment is being used, and the provisions of these statutes do not operate directly to place the same duty upon the defendant.

''I instruct you, however, that it was the duty of the Defendant, Russell & Russell, Incorporated, to use ordinary care and skill as to the condition and manner of supplying the scaffold involved in this case. One issue in this case is whether the scaffold furnished by said defendant was negligently made or supplied, and if so was reasonably certain to place life and limb in danger. It is your province to decide this issue by a full consideration of all the evidence in this case. I remind you that you heard the testimony of John Jepson, safety engineer for the State. I instruct you to disregard all of his testimony relating to the safety regulations concerning scaffold. But I also instruct you to weigh and consider his testimony regarding the custom and practice of the condition and manner of supplying scaffolds.''

We conclude that the trial court erred in giving the

foregoing instruction and in refusing the instruction requested by plaintiff.

Labor Code, sections 6312 and 6500, constitute a broad delegation by the Legislature to the Division of Industrial Safety of power to supervise places of employment and promulgate safety orders, rules and regulations reasonably related to the protection of employees in places of employment. These statutes provide in relevant part as follows:

"§ 6312. *Enforcement and administrative powers of division.* The division has the power, jurisdiction, and supervision over every employment and place of employment in this State, which is necessary adequately to enforce and administer all laws and lawful orders requiring such employment and place of employment to be safe, and requiring the protection of the life and safety of every employee in such employment or place of employment."

"§ 6500. *Safety orders, rules, and regulations.* The divisions, . . . by general or special orders, rules or regulations, . . . may:

"(a) Declare and prescribe what safety devices, safeguards, or other means or methods of protection are well adapted to render the employees of every employment and place of employment safe as required by law or lawful order.

"(b) Fix reasonable standards and prescribe, modify, and enforce reasonable orders for the adoption, installation, use, maintenance, and operation of reasonably uniform safety devices, safeguards, and other means or methods of protection, which are necessary to carry out all laws and lawful orders relative to the protection of the life and safety of employees in employments and places of employment.

"(c) Fix and order reasonable standards for the construction, repair and maintenance of places of employment necessary to make them safe.

"(d) Require the performance of any other act which the protection of the life and safety of the employees in employments and places of employment reasonably demands . . ."

There is a discernible tendency in the California decisions to give these statutes a broad and liberal interpretation in order to effect the clear intent of the Legislature, which was to provide for the safety of workmen; such a tendency is clearly indicated by recent holdings that violations of safety orders by fellow employees, general contractors (where the injured workman was an employee of a subcontractor) and owners and occupiers of land constituted negligence *per se.*

(*Armenta* v. *Churchill,* 42 Cal.2d 448 [267 P.2d 303]; *Rodin* v. *American Can Co.,* 133 Cal.App.2d 524 [284 P.2d 530]; *Mula* v. *Meyer,* 132 Cal.App.2d 279 [282 P.2d 107]; *Slovick* v. *James I. Barnes Construction Co.,* 142 Cal.App.2d 618 [298 P.2d 923]; *Atherley* v. *McDonald, Young & Nelson, Inc.,* 142 Cal.App.2d 575 [298 P.2d 700]; *Maia* v. *Security Lumber & Concrete Co.,* 160 Cal.App.2d 16 [324 P.2d 657].) Going even further, the courts have extended the benefits of the safety orders to persons who were not "workmen" or "employees"; e.g., members of the public (*Porter* v. *Montgomery Ward & Co., Inc.,* 48 Cal.2d 846 [313 P.2d 854]); delivery men (*Nungaray* v. *Pleasant Valley etc. Assn.,* 142 Cal.App.2d 653 [300 P.2d 285]; *Pierson* v. *Holly Sugar Corp.,* 107 Cal.App.2d 298 [237 P.2d 28]); and school children (*Lehmann* v. *Los Angeles City Board of Education,* 154 Cal.App.2d 256 [316 P.2d 55]).

In *Armenta* v. *Churchill, supra,* 42 Cal.2d 448, a wrongful death action, the decedent was killed when a dump truck operated by the defendant Churchill, a fellow employee, was backed over him. Appealing from an adverse judgment, plaintiff contended that the trial court erred by refusing to receive in evidence, and to include in its instructions to the jury, Construction Safety Order 1753(b) of the California Administrative Code. Said order reads: "Trucks used to haul dirt, rock, concrete or other construction material shall be equipped with a horn, bell or whistle on both the front and rear ends, or with a horn capable of emitting a sound audible under normal operating conditions from a distance of not less than two hundred feet (200′) in the rear of the truck, *provided the warning will be sounded while the truck is backing up.*" Plaintiffs contended that Churchill's violation of the foregoing safety order in failing to sound his horn as he backed the truck constituted negligence *per se.* In sustaining plaintiff's contention, the Supreme Court commented (at p. 453): "The order was issued by the Division of Industrial Safety in conformity with the provisions of sections 6312 and 6500 of the Labor Code, being a measure for the protection and safety of workmen in their places of employment. . . . [At p. 455.] Plaintiffs therefore must be sustained in their contention that the trial court committed prejudicial error in rejecting their offer in evidence of Safety Order 1753(b) and in refusing to instruct the jury thereon. The safety order, of which courts take judicial notice (*Martin* v. *Food Machinery Corp.,* 100 Cal. App.2d 244, 251 [223 P.2d 293]), established a minimum

standard of care in the safe operation of defendants' backing truck (Lab. Code, § 6318; *Campbell* v. *Fong Wan,* 60 Cal.App. 2d 553, 558 [141 P.2d 43]); its violation would constitute negligence *per se* (*Hopper* v. *Bulaich,* 27 Cal.2d 431, 435 [164 P.2d 483]; *Pierson* v. *Holly Sugar Corp.,* 107 Cal.App.2d 298, 302 [237 P.2d 28]); and the question of whether such negligence proximately contributed to the deceased's death would be one of fact for the jury. (*Rae* v. *California Equipment Co., supra,* 12 Cal.2d 563, 570 [86 P.2d 352].)''

In *Porter* v. *Montgomery Ward & Co., Inc., supra,* 48 Cal.2d 846, plaintiff recovered a judgment for damages resulting from injuries sustained when she fell on a stairway in defendant's department store. On its appeal from the judgment, defendant's principal contention was that the trial court erred in admitting in evidence a safety order issued by the Division of Industrial Safety and in giving an instruction to the effect that a violation of the safety order would give rise to a presumption of negligence on the part of the defendant. The safety order required that stairways 88 inches or more in width be equipped with a central railing. Defendant's assignment of error was premised upon the argument that plaintiff was not a member of the class for whose protection the order was designed. It was argued that sections 6312 and 6500 of the Labor Code, empowering the Division of Industrial Safety to provide for safety in every place of employment and to issue the type of order involved, were enacted pursuant to sections 17½ and 21 of article XX of the Constitution; that these constitutional provisions only authorized legislation affecting the employer-employee relationship, and that therefore safety orders issued by the division may not be regarded as applying to members of the general public such as the plaintiff.

In its opinion affirming the judgment, the Supreme Court rejected defendant's contentions, using the following language: ''The cases of *Pierson* v. *Holly Sugar Corp.,* 107 Cal. App.2d 298 [237 P.2d 28], *Nungaray* v. *Pleasant Valley etc. Assn.,* 142 Cal.App.2d 653 [300 P.2d 285], *Armenta* v. *Churchill,* 42 Cal.2d 448 [267 P.2d 303], and *Rodin* v. *American Can Co.,* 133 Cal.App.2d 524 [284 P.2d 530], are contrary to the position taken by defendant. In *Pierson* v. *Holly Sugar Corp., supra,* the plaintiff was not an employee of the defendant but was injured on the defendant's premises while making a delivery as the employee of another, and it was held that it was proper to instruct the jury regarding the effect of a violation of the division's safety order which regulated the maintenance

of elevators. The court concluded that 'the safety orders and the provisions of the Labor Code referred to were intended not only to protect employees of defendant corporation but also as safeguards *for the public generally* against injury or loss of life.' (107 Cal.App.2d at p. 302.) (Italics added.) Substantially the same language was used in *Nungaray* v. *Pleasant Valley etc. Assn., supra,* where a safety order regulating the type of 'bumper stops' to be used in certain unloading operations was applied to a third party's employee who was injured while unloading his truck in the defendant's warehouse. In *Armenta* v. *Churchill, supra,* we held that a safety order requiring that a truck hauling construction material sound its horn while backing up was applicable to show negligence on the part of one who, while delivering materials at the site of a road construction project pursuant to a contract with a paving company, struck and killed an employee of the company. In *Rodin* v. *American Can Co., supra,* it was held that a violation of safety orders in the course of a construction project could be used by an employee of a subcontractor to establish the liability of the general contractor and the owner of the premises where the work was being done. (See also *Slovick* v. *James I. Barnes Constr. Co.,* 142 Cal.App. 2d 618, 630 [298 P.2d 923]; *Mula* v. *Meyer,* 132 Cal.App.2d 279, 284-285 [282 P.2d 107].)'' (48 Cal.2d at pp. 848-849.)

Thus, in *Porter* v. *Montgomery Ward & Co., Inc., supra,* we have a clearcut holding that a safety order, issued under the authority of the same constitutional and statutory provisions which authorized the issuance of the safety order involved in the case at bar, affected the rights and duties of parties between whom there was no relationship of employer and employee.

In its brief, respondent offers the following comment: ''Respondent has no quarrel with the contention that the Legislature may empower the Division of Industrial Safety to issue orders affecting a relationship other than that existing between employer and employee (*Porter* v. *Montgomery Ward & Co., Inc., supra*). Respondent does quarrel with the contention that where a person is injured in the field of construction that any party closely *or remotely* connected therewith is responsible for complying with any and all Industrial Safety Orders which might conceivably apply to the job. There must be some reasonable limitation.''

We think that any ''reasonable limitation'' upon the reach of the safety order in question would include within its ambit

the defendant as a professional supplier of scaffolding equipment. We are unable to comprehend defendant's contention that it lacked "control" over the scaffolding in any sense essential to its ability to comply with the safety order. Indeed, if the salutary requirements of the safety order for the providing of safe guard rails on this type of equipment deserve effective enforcement, it is difficult to understand why a professional supplier of such equipment should be exempted from the duty of compliance.

Both parties to this appeal have cited *Hard* v. *Hollywood Turf Club*, 112 Cal.App.2d 263 [246 P.2d 716]. In that case the plaintiff was the employee of a painting subcontractor on a construction project. The defendant was the general contractor. Plaintiff recovered a judgment for injuries sustained when he fell from a defective scaffold.

In reversing the judgment this court emphasized the following facts: (1) the scaffold was constructed by plaintiff's employer, the painting subcontractor; (2) there was no evidence that the defendant general contractor directly controlled the movements of any of the painters, or any of the employees of any of the subcontractors, or in any way directed the details of the painting work; (3) the painting subcontractor had its own superintendent and two foremen on the job, who supervised the rigging of scaffolds and directed the course of the painters' work; (4) the general contractor had nothing to do with the construction of the scaffold; and (5) there was no evidence that the general contractor supplied the scaffold, or any part of it.

On the foregoing factual basis it was held that the general contractor was not plaintiff's employer within the definition of section 6304 of the Labor Code, and that sections 6401, 7151 and 7152 did not apply so as to prescribe a standard of care which the general contractor owed to plaintiff as the employee of a subcontractor. It is manifest that the Hard case is factually distinguishable from the case at bar. (*Cf. Johnson* v. *A. Schilling & Co.*, 170 Cal.App.2d 318, 322-323 [339 P.2d 139].)

There is merit also in plaintiff's contention that the trial court erred in refusing to admit testimony concerning a telephone conversation in which knowledge of the accident was allegedly communicated to defendant shortly after its occurrence. This matter of notice was relevant and material to a factual issue as to whether certain clamps which were essential parts of the scaffold were delivered by defendant before or

after the accident. Other assignments of error advanced by plaintiff relate to matters which are not likely to be presented upon a retrial, and, therefore, need not be considered here.

The judgment is reversed.

Fox, P. J., and Ashburn, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 17, 1960.